## UNITED STATES v. KURTZ, STUBÖECK & Co. (No. 1243).[1]

1. COLLATERAL ATTACK.

   The Board of General Appraisers is a judicial tribunal, clothed with judicial powers to determine the classification of imported goods and the rate of duty thereon, and its decisions on questions of classification or rates are open only to direct and not collateral attack by parties to the proceedings.

2. MATERIALS FOR STRAW HATS OTHER THAN PLATEAUX.

   The board's authority was complete, and this had been properly invoke   The board was charged with the duty, and it had the power, to decide not a_one the main issue concerning plateaux, but every other question of law or fact material in determining the case. The collector was without warrant of law in disregarding the board's decision.

United States Court of Customs Appeals, February 5, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7478 (T. D. 33618).

[Affirmed.]

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel; *Henry H. Childers*, special attorney, on the brief), for the United States.

*Comstock & Washburn* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

In February, 1894, certain materials for the making of straw hats were assessed for duty by the collector of customs at the port of New York at 30 per cent ad valorem as manufactures of straw under paragraph 460 of the tariff act of 1890. The importers objected to the classification of the goods and the duty assessed thereon and accordingly presented to the collector in due time the following protest:

NEW YORK, *20 Feb., 1894.*

COLLECTOR OF CUSTOMS, *Port of New York:*

SIR: We hereby protest against your decision assessing duty at 30% on certain plateaux of straw covered by entry below named. The ground of objection is that

said merchandise consists of circular discs composed of straw continuously woven and intended solely for the ornamentation of hats and is free of duty under paragraph 518, Act 1, Oct./90, "braid, plait, or similar manufacture composed of straw, chip, grass, etc., suitable for making and ornamenting hats," and Treasury Decision 12039, G. A. 952 of 16 Oct./91, admitting similar goods free of duty under above provision of law.

We pay the excess under compulsion solely to obtain possession of said merchandise.

Entry No. 7180. Vessel *Fulda.* Entered 11 Jan./94. Bond No. 14177. Liquidated 13 Feb./94. Marks and Nos., K T S 529/38, 10 cases and various.

Respectfully,              (Signed)      KURTZ, STUBÖECK & Co.
                                    Per CHAS. G. HANKS, *Atty.*

The Board of General Appraisers heard the protest, and on January 4, 1902, sustained it as to all woven or braided pieces of material composed of straw, chip, or grass intended for finishing into hats, designated on the invoices as Capellines, Monachini, Bambini, Plateaux, Rush hats, Manila hats, Java or Java hats or Chapeaux Java or Java Chapeaux, Bamboo straw hats, or Chapeaux de Paille. Because of this decision the collector, on March 25, 1902, reliquidated the entry as to the merchandise designated as "plateaux" and found in the 10 cases marked "K T S 529–38," but declined to reliquidate it as to similar goods designated by other names in the decision and contained in other cases. This ruling of the collector brought forth a second protest from the importers, in which it was claimed that the braids, plaits, and similar merchandise covered by importers' entries and invoices were free of duty and that the collector's reliquidation had not been made in accordance with the board's decision. This protest was forwarded by the collector to the board for determination in May, 1912, some 10 years after it was made, and, having been heard, was sustained.

The Government appealed and now contends that the original protest filed was directed to the "plateaux" contained in cases 529–38, and that the board had no power to order a reliquidation of any other merchandise than that covered by the specific claim of the protest. This objection of the Government is in effect a claim that the board had no jurisdiction under the original protest to make a decision as to any merchandise save and except that designated by the name of "plateaux" and that, therefore, its decision as to similar merchandise, but bearing a different name, was wholly void and without binding effect on the collector. We can not agree that the decision of the board was wholly void as to all merchandise designated in such decision by names other than "plateaux." The board was clothed by law with authority to determine the classification of imported merchandise, and once that authority was invoked by a protest filed with the collector, the board acquired jurisdiction of the parties to the dispute and the power to determine the controversy. Jurisdiction of the subject matter of the controversy and of the parties necessarily carried with it not only the power to decide the

main issue, but also every question of law or fact material for the proper determination of the case. At first instance it was therefore for the Board of General Appraisers to say what particular merchandise was covered by the protest of the importers and whether that document called for a review of the classification of 10 cases of plateaux or of 10 cases of plateaux and 37 cases of similar merchandise bearing other names. The classification not only of plateaux, but of all similar merchandise included in the entry having been determined by the board, that tribunal must be presumed to have held that the protest was broad enough to embrace the merchandise so classified. Such a conclusion on the part of the board may have been erroneous, but whether it was or not could be determined only by an appeal or by some other appropriate proceeding directly attacking the validity of the decision. Both the importers and the Government had full notice of the decision of the board and of the fact that it was directed not only to plateaux, but to all merchandise of a like character. If either party felt aggrieved or believed the decision to be incorrect, relief might have been had by applying for a rehearing or by appeal to the courts. (Secs. 12, 14, and 29, act of 1909.)

As neither remedy was sought, the decision became final and conclusive on all parties, and it accordingly became the duty of the collector of customs to reliquidate the entry in conformity with the direction of the Board of General Appraisers. (Sec. 14, act of 1909.) At the very most the decision of the board was voidable, not void, and advantage not having been taken of the remedies provided by law for the correction of erroneous or voidable decisions it did not lie with the collector to constitute himself an appellate tribunal to determine the validity of the board's mandate to him, and thus avoid the effect of a decision which the board had jurisdiction to make and which, by operation of law, had become final and definitely decisive of the rights of the parties. The Board of General Appraisers is a judicial tribunal, clothed with judicial powers to determine the classification of imported goods and the duty which should be imposed thereon. Marine v. Lyon (65 Fed., 992, 994); Stone v. Whitridge (129 Fed., 33, 36). Once the board has been called upon to exercise its jurisdiction for the settlement of a controversy as to the classification or the rate of duty which the merchandise should bear, its decisions are open only to direct and not to collateral attack by the parties to the proceeding. (Sec. 14, act of 1909.) The board having been vested with jurisdiction to make a decision, no error which it might make in reaching its conclusion would render the decision void or open the judgment to collateral attack. Sec. 14, act of 1909; McGoon v. Scales (9 Wall., 23, 30). The board may have mistaken the law or misjudged the facts, but its adjudication once made was binding upon all the

parties until set aside either on rehearing or by the proper appellate tribunal. Gray *v.* Brignardello (1 Wall., 627, 634); Voorhees *v.* United States Bank (10 Pet., 449, 473).

The decision of the Board of General Appraisers is *affirmed.*