MECKE & CO. ET AL. *v*. UNITED STATES (No. 2173).[1]

RES ADJUDICATA—ADDITIONAL DUTY ON RELIQUIDATION UNDER BOARD'S ORDER.
    Goods were assessed as specific-duty and claimed in the protest to be ad valorem. The protest was sustained and the judgment affirmed in this court (11 Ct. Cust. Appls. 46; T. D. 38689). Upon reliquidation the collector assessed additional duty for undervaluation under paragraph I, Section III, tariff act of 1913. The assessment of additional duty was not barred under the rule of res adjudicata, since that issue was not presented by the record on appeal, and could have formed, and did form, no part of the judgment order. The assessment was in accordance with law.

United States Court of Customs Appeals, June 9, 1924.

APPEAL from Board of United States General Appraisers, G. A. 8536 (T. D. 39124).

[Affirmed.]

*Comstock & Washburn* (*Geo. J. Puckhafer* of counsel) for appellants.
*William W. Hoppin*, Assistant Attorney General (*Samuel M. Richardson* and *Oscar Igstaedter*, special attorneys, of counsel), for the United States.

[Oral argument October 17, 1923, by Mr. Puckhafer and Mr. Richardson.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND,. and HATFIELD, Associate Judges.

MARTIN Presiding Judge, delivered the opinion of the court:

This appeal relates to an assessment of "additional duties" under paragraph I, Section III, tariff act of 1913, the pertinent part of which reads as follows:

\* \* \* and if the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total appraised value thereof for each 1 per centum that such appraised value exceeds the value declared in the entry \* \* \*.

---

[1] T. D. 40263.

The importers do not deny that the appraised value of the imported merchandise did in fact exceed the entered value, nor that the merchandise was subject to an ad valorem rate of duty, but they claim that the assessment of additional duties in this case was barred under the rule of res adjudicata by a former decision of the board relating to the same merchandise. This raises the only question in the case, and requires an explanation of the proceedings relating to the importation.

When the importers entered the merchandise they regularly declared its foreign-market value in the entry, but the local appraiser appraised it at a value which exceeded that declared in the entry. Due notice of the advance was sent to the importers, but no appeal was taken to reappraisement; hence the appraiser's advance became final. The collector assessed the merchandise with duty at the rate of 15 cents per pound under paragraph 36 of the tariff act of 1913. He did not then assess any additional duties under paragraph I, supra, because its provisions related only to ad valorem merchandise, whereas the collector held this to be specific-duty merchandise. The importers protested against the assessment of 15 cents per pound, claiming free entry for the merchandise under paragraph 477, or alternatively an assessment of 10 per cent ad valorem under paragraph 385. The protest was tried before the Board of General Appraisers, who held that the merchandise was not dutiable at the specific rate of 15 cents per pound as assessed, but at the rate of 10 per cent ad valorem as alternatively claimed in the protest.

The operative terms of the board's judgment read as follows:

It is hereby ordered, adjudged, and decreed this 14th day of April, 1920, that the protests in this case, claiming 10 per cent under paragraph 385 of the tariff act of 1913, are sustained * * *.

The collector of customs at the port of New York will reliquidate the entries accordingly.

The judgment was affirmed by this court (11 Ct. Cust. Appls. 46; T. D. 38689).

It is important to note that up to this point in the proceedings no question relating to "additional duties" under paragraph I, supra, had arisen in the case, notwithstanding that the appraised value of the merchandise exceeded its entered value. As already explained, this was because the collector had assessed duty at a specific rate, whereas the statutory provisions for additional duties applied only to ad valorem merchandise. Consequently the subject of additional duties did not enter in any manner into the first liquidation, nor was the subject mentioned in the protest, nor did the board refer to it in its judgment or order. But after the board had vacated the specific-duty assessment, and held that the merchandise was dutiable at an ad valorem rate of duty, the subject of additional duties under paragraph I necessarily arose in the case.

Accordingly, when the collector came to reliquidate the entry he assessed duty at the rate of 10 per cent ad valorem, and also assessed appropriate additional duties under paragraph I. The importers protested against the additional duties, claiming that the board had ordered an assessment of 10 per cent ad valorem, no more and no less, and that the assessment of additional duties was an unwarranted variance from the order. The protest was overruled by the board, and the importers appealed to this court upon the subject of the additional duties alone.

It may be repeated that the present importation responded exactly to the provisions of paragraph I imposing additional duties in cases of undervaluation. The imported merchandise was "subject to an ad valorem duty," and its appraised value did "exceed the value declared in the entry." It thus became the mandatory duty of the collector under the act to impose additional duties thereon, unless prevented by the operation of the board's former judgment. The importers in fact concede that if the collector in the first liquidation had assessed ad valorem duty, he would have been bound also to assess additional duties because of the undervaluation. But they contend that the subject of additional duties was foreclosed by the board's judgment at the first trial, and that inasmuch as that judgment contained no provision for such duties, the collector was not entitled to assess them in his reliquidation. The question therefore practically becomes one of res adjudicata alone.

The general rule as to the doctrine of res adjudicata is stated with citations in 23 Cyc. p. 1215, "Judgments," as follows:

A fact or question which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein, so far as concerns the parties to that action and persons in privity with them, and can not be again litigated in any future action between such parties or privies, in the same court or in any other court of concurrent jurisdiction, upon the same or a different cause of action.

It has also been held in Henderson *v.* Henderson (3 Hare 100, 115) that—

The plea of res adjudicata applies, except in special cases, not only to the points upon which the court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties exercising reasonable diligence, might have brought forward at the time.

Under these authorities we think that the subject of additional duties was not involved in the former trial nor adjudicated by the board at that time. The issue which then came before the board was made up by the collector's liquidation and the importers' protest, which virtually served as pleadings in the case. The only

issue thereby raised was whether the merchandise was dutiable at the specific rate of 15 cents per pound, as assessed by the collector, or was free of duty, or dutiable at 10 per cent ad valorem, as claimed by the importers. Accordingly, since no additional duties were included in the liquidation nor mentioned in the protest, the subject did not enter into the issue. The board's judgment responded to the issue as made, and did no more than sustain the alternative claim of the protest for an assessment of 10 per cent ad valorem. It is, therefore, manifest that the subject of additional duties was not presented to the board, nor considered by them, nor did it enter into their judgment in any manner.

It may be asked whether the collector by the exercise of reasonable diligence could not have brought the subject of additional duties before the board at that trial, so as to conform to the requirements of the rule quoted from Henderson v. Henderson, supra. The peculiar circumstances of the present case at once answer this question in the negative. It was not until after the publication of the board's decision upon the first protest that additional duties became applicable to the merchandise, consequently the subject could not have been brought before the board prior to that time. It is proper also to note that the importers have actually lost nothing by reason of the procedure followed in the case. In fact their contention resolves itself into a complaint because the collector failed in the first place to assess duty at 10 per cent ad valorem together with the same additional duties which are now in question. For after all, the present assessment including the additional duties, is precisely the one which, according to the importers' contention, should have been made by the collector in the first liquidation.

The fact that the board's order to the collector contained no direction with reference to the assessment of additional duties is of no consequence. Such a direction was unnecessary, for the order as it stood implied that the reliquidation should follow the decision of the board in respect to the issues decided by it, and otherwise should proceed according to law. And since the board had decided that the merchandise was subject to an ad valorem rate of duty the collector was bound to assess such additional duties as the statute itself imposed in cases of undervaluation of merchandise. The assessment therefore was not inconsistent with the terms of the order, but was a lawful compliance therewith.

This view is analogous to that expressed by Judge Barber, speaking for this court, in the case of Lord & Taylor v. United States (8 Ct. Cust. Appls. 345, 348; T. D. 37610), as follows:

But we think fairly interpreted the decision of the board in directing the reliquidation of these entries was designed to direct the collector to reliquidate comformably to the statute and to the regulations of the Treasury Department.

The average number of the yarn not having been determined by the board and no finding as to the precise rates of duty having been made by it, we think the duty was cast upon the collector to ascertain the average number of the yarn in the manner pointed out by the statute, in the execution of which, so far as appears in this case, it would be his duty to follow the department regulations touching that subject.

It must be conceded that prior to the enactment of the tariff act of 1922 importers frequently suffered real hardship because of the assessment of additional duties, in cases wherein they had innocently entered their merchandise at an undervaluation. The instant case is doubtless one of that class. However, when the importers made their entry it was incumbent upon them to state the market value of the merchandise as defined by law. It was not then known to them whether the collector would classify the merchandise as duty-free, or as subject to a specific or an ad valorem rate of duty. They knew that if they undervalued the merchandise in their entry, they would be liable for additional duties in case of an ad valorem assessment. This was the situation also when the local appraiser appraised the merchandise at a value exceeding that declared in the entry. Afterwards the merchandise was held to be dutiable at an ad valorem rate, and the assessment of additional duties necessarily followed under the imperative mandate of the law. The fact that the entry was first liquidated at a specific rate of duty, and afterwards reliquidated by order of the board at an ad valorem rate, is immaterial, and does not serve to relieve the importers from the consequences imposed by the statute in cases of undervaluation.

The judgment of the board is accordingly *affirmed.*

### CONCURRING OPINION BY BARBER, JUDGE.

I concur in the result.

The fact of undervaluation being conceded, the mandate of the statute compels the collector to assess what is termed therein, additional duties, although they are not such in fact.—Helwig *v.* United States (188 U. S. 605).

As I view it, when undervaluation is established, as in this case, whether or not these so-called additional duties shall be levied, is not a question for the Board of General Appraisers.

### DISSENTING OPINION BY SMITH, JUDGE.

I regret that I can not concur in the majority opinion.

In this case the collector of customs at the port of New York classified certain merchandise as gums and assessed duty thereon at 15 cents per pound under paragraph 36 of the act of 1913.

The appraiser advanced the entered value and notice of the advance was sent to the importers. No appeal was taken to reappraisement

inasmuch as the collector's classification subjected the goods to a specific and not an ad valorem rate of duty.

The importers protested that the merchandise was either free of duty or dutiable at 10 per cent ad valorem as a nonenumerated unmanufactured article.

The Board of General Appraisers sustained the protest in so far as it claimed that the goods were dutiable at 10 per cent ad valorem under paragraph 385 and directed the collector to reliquidate the entry accordingly.

The decision of the Board of General Appraisers was affirmed by this court and the case having been remanded to the Board of General Appraisers, the board ordered that its judgment ordering the collector to reliquidate the entry and to assess duty on the goods at 10 per cent ad valorem should stand as originally made.

The collector reliquidated the entry by imposing on the merchandise not only a duty of 10 per cent ad valorem as claimed in the protest, but additional duties ranging, it is said, from 60 per cent to 75 per cent of the appraised value.

The importers thereupon protested that the collector had not conformed to the final judicial order made by the Board of General Appraisers and that his assessment of additional duties by way of reliquidation was without warrant or authority of law. The Board of General Appraisers overruled the protest and from that decision this appeal was taken.

The classification of the goods and the rate and amount of duty which they should bear was the issue brought by the original protest to the Board of General Appraisers to be tried and determined. On the trial of that issue the Government contended that the goods were gums and that therefore they were subject to a duty of 15 cents per pound, under section 36 of the tariff act of 1913.

As the question before the board was the rate and amount of duty, the Government had the right to insist that the goods were subject to additional duties if it should be held that an ad valorem rate was applicable. The Government having declined to make that point, the original judgment of the board imposed no additional duties and sustained that part of the protest which claimed that a duty of only 10 per cent under paragraph 385 should be assessed.

On appeal from that judgment the question of additional duties was not raised and this court affirmed the judgment of the board as entered. The issue as to the rate and amount of duty having been properly raised by protest and that issue having been finally determined by the judicial tribunals having jurisdiction of the parties and the subject matter, the collector could not under the guise of a reliquidation apply to the importation a higher rate of duty or exact a higher amount of duty than that which was finally adjudged.

The subject matter of the original Mecke case was the rate and amount of duty which should be paid to the collector, and as that case was decided against the Government, the question of the rate and amount of duty was res adjudicata.

In trying this question, I believe I state the rule of court correctly, that where a given matter becomes the subject of litigation in and of adjudication by a court of competent jurisdiction, the court requires the parties to bring forward their whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect of matter which might have been brought forward as part of the subject in controversy, but which was not brought forward, only because they have, from negligence, inadvertence, or even accident, omitted part of the case. The plea of res adjudicata applies, except in special cases, not only to the points upon which the court was required by the parties to form an opinion, and pronounce a judgment, but to every point which properly belonged to the subject of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time.—Henderson *v.* Henderson (3 Hare 100, 115), cited in Cromwell *v.* County of Sac (94 U. S. 351–357, 358).

In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defenses never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defense actually presented in the action but also as to every ground which might have been presented, is strictly accurate when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, can not again be brought into litigation between the parties in proceedings at law upon any ground whatever.—Cromwell *v.* County of Sac (94 U. S. 351, 352, 353).

A judgment is conclusive not only as to the res of the case adjudged but is conclusive as to the same subject matter in further litigation between the same parties, although the res itself may be different. * * *

But the principle reaches further. It extends not only to questions of fact and of law which were decided in a former suit but also to the grounds of recovery which might have been but were not presented.—Beloit *v.* Morgan (7 Wall. 619, 621, 622).

The Government can not split its demands for duty and present them piecemeal in successive suits.—Beloit *v.* Morgan, supra, 623; Bendernagel *v.* Cox (19 Wend. 207).

When the second suit is upon the *same cause of* action between the same parties as the first, the judgment in the former is conclusive in the latter as to every question which was or might have been presented and determined in the first action.—Nesbit *v.* Riverside Independent District (144 U. S. 610, 618).

The final decision in the first case is conclusive unless it can be made to appear that the question upon which the determination of the second case rests is one that neither was nor could have been presented and determined in the first case.—Blackford *v.* Wilder (28 Appls D. C. 535, 550).

Whether the final decision in one interference proceeding is a bar to a second interference proceeding depends not upon the claims which are actually tried out in the first interference proceeding but on the subject matter of the interference. If either of the parties might have made broader claims in the first proceedings, but failed to do so, he is concluded by the final decision of the first interference proceeding.—Cross *v.* Rusby (42 Appls. D. C. 341).

The question whether an interference exists depends chiefly upon the subject matter disclosed and not merely upon the *language of the respective claims*, and the applicant in making application for a patent is barred in a second interference proceeding as to all matters which might have been raised in the prior interference.—New Departure Manufacturing Co. *v.* Robinson (39 Appls. D. C. 504).

Marconi made application for a patent for a wireless telegraph transmitter and an interference was declared between him and Babcock as to the rights of the parties to certain claims of invention. Babcock won, whereupon Marconi sought to make broader claims than those litigated. The court held that the broader claims might have been presented in the first interference proceeding and that, having failed to do this, his right to the broader claims was res adjudicata.—In re Marconi (38 Appls. D. C. 286, 291, 292, 293).

The collector can not constitute himself an appellate tribunal for the review or modification of the board's mandate to him. If the board fails to adjudge to the Government the proper amount of duties, the error may be corrected in the manner prescribed by law, but until it is so corrected the collector is bound to respect a judgment which has become final and definitely decisive of the rights of the parties.—United States *v.* Kutz (5 Ct. Cust. Appls. 144, 145; T. D. 34192).

Customs cases can not be tried piecemeal; and when the proper judicial tribunals have acquired jurisdiction to determine and have finally determined the rate and amount of duty, failure on the part of the Government or of the importers to present matters which might have resulted in a different judgment does not warrant a reopening

·of the case. Any other holding would serve to multiply litigation, ·cause vexatious delays, and result in serious unnecessary losses.

The judgment of the Board of General Appraisers should, in my ·opinion, be reversed.