(C. D. 1091)

ARIS GLOVES, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 16, 1948)

*Mary Rehan* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*John J. McDermott* and *Richard F. Weeks*, special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges; OLIVER, P. J., and COLE, J., concurring

MOLLISON, Judge: These protests are directed against the reliquidation made by the collector of customs of certain of the entries involved under the decision and judgment of this court made in the case

of *Aris Gloves, Inc.* v. *United States*, protests 4095–K, etc., the decision in which is reported in Abstract 49794, 13 Cust. Ct. 304. It appears that the merchandise in that case consisted of leather gloves imported from Czechoslovakia which were originally assessed with duty by the collector at the rate of $4 per dozen pairs, plus $3.50 per dozen pairs under the provisions of paragraph 1532 (a) of the Tariff Act of 1930 (19 U. S. C. 1934 ed. §1001, par. 1532 (a)), as amended by the French Trade Agreement reported in T. D. 48316, on the theory that they were hand-seamed gloves provided for in said paragraph as so amended. The importer filed protests against such action, claiming, among other things, that certain of the gloves were dutiable at only $5 per dozen pairs, plus $1 per dozen pairs additional, under the provisions of paragraph 1532 (a), as amended by the Czechoslovakian Trade Agreement reported in T. D. 49458, on the ground that they were not hand-seamed, but machine-seamed, and were therefore covered by the latter provision. Other certain gloves were claimed to be dutiable at only $5.50 per dozen pairs under the provisions of paragraph 1532 (a), without modification by any trade agreement, on the theory that they did not fall under either the provision for hand-seamed gloves or the provision for machine-seamed gloves.

When the original case (protests 4095–K, etc.) was called for trial counsel for the parties entered into a stipulation in which it was recited that the gloves involved were the same in all material respects as those the subject of *United States* v. *Aris Gloves, Inc.*, 31 C. C. P. A. 169, C. A. D. 268, the *record in which case was incorporated as part of the record in the case then before the court (protests 4095–K, etc.).* In its decision in the cited case it was held by the Court of Customs and Patent Appeals that one of the types of gloves involved fell into the category of machine-seamed gloves provided for in the modification of the tariff paragraph contained in the Czechoslovakian Trade Agreement, and that the other type, being neither hand-seamed nor machine-seamed, was dutiable under paragraph 1532 (a), unmodified.

Acting upon the stipulation and the incorporated record, and under the authority of the decision in the cited case,. the judgment of this court in protests 4095–K, etc., sustained the protest claim in each case, the pertinent language thereof being as follows:

It is hereby ordered, adjudged and decreed: That the protests in this case, insofar as they claim certain leather gloves assessed with duty at the rate of $7.50 per dozen pairs under paragraph 1532 (a) of the Tariff Act of 1930 and the French Trade Agreement reported in T. D. 48316, to be dutiable at lower rates under paragraph 1532 (a) of the Tariff Act of 1930 and the Czechoslovakian Trade Agreement reported in T. D. 49458, or paragraph 1532 (a) alone, be and the same are hereby sustained to the following extent: The claim for duty at the rate of $5 per dozen pairs plus $1 per dozen pairs under paragraph 1532 (a) and the Czechoslovakian Trade Agreement is sustained only as to the merchandise marked "A" on the invoices and checked TJM by Examiner T. J. McCarthy on

the invoices, and the claim for duty at the rate of $5.50 per dozen pairs under paragraph 1532 (a) alone is sustained as to the merchandise marked "B" and checked TJM by Examiner T. J. McCarthy on the invoices, and the Collector of Customs at the port of New York will reliquidate the entries accordingly.

The final clause of the provision for machine-seamed gloves contained in the Czechoslovakian Trade Agreement reads as follows:

*Provided,* That all the foregoing shall be dutiable at not less than 50% ad val.

and a similar provision is found in paragraph 1532 (a) as originally enacted.

During the course of the reliquidation of the entries in the cases at bar, it was discovered by the collector that the application to certain of the gloves involved of the rates specified in the judgment would result in the imposition of duties which would be less than 50 per centum on an *ad valorem* basis. As to such items he thereupon assessed duty at the 50 per centum rate, and that action is the subject of the suits before us, the plaintiff contending that the reliquidation should have been at the rates set forth in the judgment and that the assessment of duty at the 50 per centum rate was illegal.

We are of the opinion that the claim of the plaintiff is well-founded and that the protests must be sustained. It has been repeatedly held that insofar as the execution of judgments of this court is concerned, the collector of customs is a purely ministerial officer and has the duty and obligation to carry them out as directed therein. In the very important case of *United States* v. *Kurtz, Stuböeck & Co.,* 5 Ct. Cust. Appls. 144, T. D. 34192, our appellate court said:

\* \* \* At the very most the decision of the board was voidable, not void, and advantage not having been taken of the remedies provided by law for the correction of erroneous or voidable decisions it did not lie with the collector to constitute himself an appellate tribunal to determine the validity of the board's mandate to him, and thus avoid the effect of a decision which the board had jurisdiction to make and which, by operation of law, had become final and definitely decisive of the rights of the parties.

This case, which we deem to be decisive and controlling of the issue, has never been overruled, but, on the contrary, has been repeatedly cited with approval by this and our appellate court.

In *Bullocks, Inc.* v. *United States,* 68 Treas Dec. 99, T. D. 47809, involving a situation wherein a collector refused to reliquidate in accordance with a judgment of this court, our second division said:

The collector attempts to justify his action in refusing to obey the plain mandate of this court by saying that "the merchandise covered by this decision is not the merchandise on which protest 12559 was filed." So long as jurisdiction over this case resided in the collector, the law allowed him broad latitude as to the action he might take and a wide range of discretion, but once the collector had lost jurisdiction over the case he became nothing more than a mere ministerial officer to follow and obey the mandates of this court. He lost all of his discretion in the matter once he lost his jurisdiction of the case, and it is not for him, once

a decision has been rendered by this court, and the time for appeal therein has expired, to say whether or not the merchandise covered by a decision is or is not the merchandise covered by a protest. That is a matter which has already been determined by this court and is no longer open to so much as a suggestion from the collector.

Again, in *Frank P. Dow Co., Inc.* v. *United States*, 69 Treas. Dec. 336, T. D. 48163, in a similar situation, this court said:

* * * we are of the opinion that the collector, being a purely ministerial officer and by statute charged with the administration of the law, is bound to follow the judgments of this court whether he may regard them as right or wrong. He could of course have had the matters in question in the present case called to the attention of this court through an application for rehearing seasonably filed or, if he so elected, could have had a timely appeal filed from this court's decision. He did neither. Rather, he chose arbitrarily to reliquidate the entry as he deemed proper and to ignore the judgment of this court. To hold such procedure legal would in effect be an attempt to vest in collectors appellate jurisdiction over the judgments of this court. The mere statement thereof manifests the utter absurdity of any such proposition.

See also in this connection *Fulghum & Co.* v. *United States*, 1 Cust. Ct. 284, C. D. 66; *United States* v. *Dickson*, 139 F. 251; 25 C. J. S. p. 316, § 157.[1]

On behalf of the defendant it is contended that the judgment rendered by this court in protests 4095–K, etc., contained a latent ambiguity, in that it would not be discovered until the actual process of reliquidation whether the rates specified in the judgment would result in the application of a duty of less than 50 per centum ad valorem. It is also the defendant's contention that when a judgment of this court contains a patent or a latent ambiguity the collector has the right and power to construe and interpret the judgment in order to effectuate the intent of Congress, and hence the collector's action in reliquidating at the 50 per centum rate was proper.

We are in complete disagreement with these contentions of the defendant. There can be no doubt but that when a judgment contains an ambiguity there is only one place where the judgment may be construed, or its provisions, directions, and orders interpreted, or the ambiguity eliminated—to wit, in the courts.

The law of the matter is succinctly stated in the section on "Judgments" in Corpus Juris Secundum, under the caption "Construction," being 49 C. J. S. pp. 862–3, § 436:

The legal operation and effect of a judgment must be ascertained by a construction and interpretation of its terms, *and this presents a question of law for the court.* [Italics added.]

See also *Charles* v. *St. Louis, M. & S. E. R. Co.*, 101 S. W. 680, 124 Mo. App. 293.

---

[1] "Under the express terms of the statute the collector has the duty of reliquidating in accord with a decision of the board of general appraisers now the customs court, sustaining an importer's protest, and a reliquidation contrary to the decision is void."

The proposition that the power of construction or interpretation of judgments may reside in one of the litigants to an action, or in its representatives, is so fundamentally absurd that the court is amazed that the defendant herein should seriously urge it.

It is also sought by counsel for the Government to defend the action taken by the collector on the reliquidation of the entries covered by protests 4095–K, etc., on the ground that such action was "consonant with the real import of the judgment." This is but another method of suggesting that the collector may construe or interpret a judgment by substituting his own opinions as to what it means for the directions given in the judgment, which in the case of the judgment in question plainly and specifically set forth the rates at which the court determined the entries should be reliquidated. For the reasons stated above, it is manifest that a collector may not so construe or interpret a judgment of this court.

The judgment rendered in protests 4095–K, etc., sustained the claims made in each of the protests that the rates of duty on the merchandise should be $5 per dozen pairs plus $1 per dozen pairs as to the merchandise marked "A" on the invoices, and $5.50 per dozen pairs as to the merchandise marked "B" on the invoices, and it directed the collector of customs to "reliquidate the entries accordingly." If, upon attempting to follow that mandate, the collector was of the opinion that a statutory provision was at variance with the court's order, his obvious duty was to call the matter to the attention of the proper authorities who would be empowered by law to cause proper application to be made for construction, interpretation, or clarification of the judgment—not to ignore its provisions and reliquidate the entries in a manner directly contrary to the mandate of the judgment and its precise orders and directions.

Under section 187 (a) of the Judicial Code (28 U. S. C. 1940 ed. § 296) the United States Customs Court was set up and organized for the especial purpose of construing the tariff laws of the United States and for the purpose of ascertaining the intent of Congress in respect thereto in cases where its jurisdiction is properly invoked by the filing of a timely protest, appeal for reappraisement, application for review, or petition for remission of additional duties. Sections 514 and 515 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. §§ 1514, 1515) empowered the Customs Court to review, upon proper and timely protest, etc., among other things, the collector's action with reference to the assessment of duty on imported merchandise, which action reflects the collector's interpretation of the tariff law. The very purpose of sections 514 and 515 was to provide a judicial review of the collector's decisions and interpretations of the tariff law, and the determinations and judgments of the Customs Court upon such

controverted issues under the tariff act were made final and conclusive upon all persons.

After the United States Customs Court, which has been given exclusive jurisdiction in such cases, renders a judgment, section 515 of the tariff act directs that the decision and judgment order shall be transmitted to the collector, and that the collector "shall take action accordingly." The collector, therefore, must find the basis for his action taken upon the rendition of judgment by this court within the four corners of the judgment. 25 C. J. S. p. 345, § 181; *O'Connor-Harrison & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 214, T. D. 42239; and *United States* v. *Kurtz, Stuböeck & Co.*, 5 Ct. Cust. Appls. 144, T. D. 34192.

The stipulation entered into by the parties in protests 4095–K, etc., reads as follows:

It is hereby stipulated and agreed by and between counsel for the plaintiff and the Assistant Attorney General for the United States, that the merchandise marked "A" and checked TJM by Examiner T. J. McCarthy on the invoice covered by the above enumerated protests, assessed for duty at the rate of $7.50 per dozen pairs under paragraph 1532 (a) and T. D. 48316 of the Tariff Act of 1930, consists of Gloves, Leather, the same in all material respects as those the subject of *United States* v. *Aris Gloves, Inc.*, C. A. D. 268, and therein held properly dutiable at $5.00 per dozen pairs and $1.00 per dozen pairs under paragraph 1532 (a) of the Tariff Act of 1930 and T. D. 49458.

It is further stipulated and agreed that the merchandise marked "B" and checked TJM by Examiner T. J. McCarthy on the invoice covered by the above enumerated protests assessed for duty at $7.50 per dozen pairs under paragraph 1532 (a) and T. D. 48316, of the Tariff Act of 1930, consists of Gloves, Leather, the same in all material respects as those the subject of C. A. D. 268, *United States* v. *Aris Gloves, Inc.*, and therein held to be properly dutiable under paragraph 1532 (a) of the Tariff Act of 1930 at $5.50 per dozen pairs;

*And it is further stipulated and agreed that the record in C. A. D. 268 be incorporated with the record in this case* and that the protests be submitted on this stipulation, the protests being limited to items marked "A" and "B" as aforesaid. [Italics added.]

This stipulation was freely entered into by competent representatives of the parties, and the case submitted. There is no suggestion of fraud, duress, force, violence, or intimidation in its procurement. A decision and judgment have been rendered in the case (protests 4095–K, etc.) based not only upon said stipulation *but also upon the facts and matters contained in the incorporated record*, and the time within which the said judgment (in protests 4095–K, etc.) may be appealed from, or a rehearing granted in the case, has expired. Sections 515 and 518, Tariff Act of 1930 (19 U. S. C. 1940 ed. §§ 1515, 1518). Although counsel for the defendant now maintains that the stipulation was bad *as to form*, neither he nor counsel for plaintiff suggests that it was not the exact and precise stipulation which the parties by their representatives intended to execute.

It is obvious from a comparison of the stipulation and the judgment rendered that the judgment is in accord with the intendment of the stipulation, and that the parties intended that the court should follow the decision of the Court of Customs and Patent Appeals in .the case of *United States* v. *Aris Gloves, Inc.*, 31 C. C. P. A. 169, C. A. D. 268, and direct reliquidation of the entries involved at the rates therein mentioned. The judgment rendered in protests 4095–K, etc., was the precise judgment which the parties expected, and by their stipulation and submission sought to induce the court to render.

On oral argument, counsel for the defendant states that through oversight on its part no consideration was given by the representatives of. the. defendant at the time the stipulation was signed to the matter of whether the proviso with respect to the 50 per centum ad valorem rate was applicable to the merchandise in question. On the other hand, the position of counsel for the plaintiff is that at all times she considered the proviso to be inapplicable.

Of course, if, after execution and delivery of the stipulation and submission of the case, the representatives of the defendant felt that it did not express the intendment of both of the parties therein, and if the decision and judgment had not been rendered *and had not become final*, defendant's counsel might, if legal grounds existed, have taken steps to be relieved from the effect of the said stipulation and submission. However, the record in this case and the public records of this court reveal that no effort was made by the defendant or its legal representatives toward this end, and under these circumstances the parties are bound by their stipulation and submission. Mere mistake in realizing the consequences of the execution of a document is no legal ground'for avoiding the document.

This is neither the time nor the place wherein the merits of protests 4095–K, etc., or the judgment rendered therein, may be examined or reviewed. That time has passed, except for the possible correction of clerical errors and the like. *United States* v. *Henry Maier*, 18 C. C. P. A. 409, T. D. 44679. Section 515 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. §1515) provides that the determination of this court—

* * * shall be final and conclusive upon all persons, and the papers transmitted shall be returned, with the decision and judgment order thereon, to the collector, who shall take action accordingly, except in cases in which an appeal shall be filed in the United States Court of Customs and Patent Appeals within the time and in the manner provided by law.

No such appeal was filed, nor was any application for rehearing, as provided for in section 518 of the same act (19 U. S. C. 1940 ed. §1518), made in connection with the judgment of this court rendered in protests 4095–K, etc., and as a consequence the said judgment became final and conclusive upon all persons in accordance with said section 515 of the Tariff Act of 1930. *United States* v. *Kurtz, Stu-*

*böeck & Co.*, 5 Ct. Cust. Appls. 144, T. D. 34192; *O'Connor-Harrison & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 214, T. D. 42239; 25 C. J. S., p. 345, §181.

Nor may we *now in this proceeding* construe the decision of the Court of Customs and Patent Appeals in *United States* v. *Aris Gloves, Inc.*, 31 C. C. P. A. 169, C. A. D. 268, cited in the stipulation, and the record in which was incorporated as part of the record in protests 4095–K, etc. That decision establishes the law of the case in respect to the issues therein decided.

The situation of the parties in this case is well-described in section 331 of Freeman's Law of Judgments, 5th ed. vol. 1, p. 663:

\* \* \* A party to a judgment feeling himself aggrieved thereby may, in a proper case, either move that it be vacated, or prosecute an appeal or writ of error, or maintain a suit in equity to enjoin its enforcement. These, unless the judgment is void on its face, are the only remedies open to him, and if he resorts to neither, or resorting to any or all he is denied relief, he cannot avoid the judgment, when offered in evidence against him, by proving that it ought not to have been pronounced, and was procured by fraud, mistake, perjury or collusion, or through some agreement entered into by the prevailing party, and which he neglected or refused to perform.

It is therefore of no legal significance affecting the decision in this case whether the judgment rendered in protests 4095–K, etc., was or was not erroneous. Erroneous judgments, until vacated, set aside, annulled, or reversed, must be obeyed and performed by all the parties thereto. *O'Connor-Harrison & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 214, T. D. 42239. In the leading customs case of *United States* v. *Kurtz, Stuböeck & Co.*, 5 Ct. Cust. Appls. 144, T. D. 34192, the court said:

\* \* \* The board may have mistaken the law or misjudged the facts, but its adjudication once made was binding upon all the parties until set aside either on rehearing or by the proper appellate tribunal. Gray v. Brignardello (1 Wall. 627, 634); Voorhees v. United States Bank (10 Pet., 449, 473).

The universal acceptance of this principle may be shown by the following quotations from Black on Judgments, 2nd ed., vol. 1, sec. 261, which is captioned "Erroneous and Irregular Judgments":

No principle of law is more firmly settled than that the judgment of a court of competent jurisdiction, so long as it stands in full force and unreversed, cannot be impeached in any collateral proceeding on account of mere errors or irregularities, not going to the jurisdiction. \* \* \*

and sec. 262, captioned "Mistakes in the Judgment":

Closely allied to the principle just discussed is the rule that a mistake in the rendition or entry of a judgment can be taken advantage of only in a direct proceeding. A final judgment cannot be collaterally impeached because the opinion of the court shows that a different judgment should have been entered. \* \* \*

Thus, the only basis upon which any action might be taken in this proceeding upon the judgment in protests 4095–K, etc., would be

upon a showing that the same was void for want of jurisdiction. The court undoubtedly had jurisdiction of the cases involved and the subject matter, and mere errors could be corrected only upon timely application for rehearing or by appeal in the manner provided by law, and, moreover, the validity of the judgment has not been challenged in this or in any other proceeding.

This phase of the matter is treated in the section on "Judgments" in 49 C. J. S., p. 880, sec. 449, as follows:

\* \* \* ' Where the court has jurisdiction of the parties, of the subject matter or cause of action, and of the question determined or relief granted, that is, where the court has jurisdiction to render the particular judgment, mere errors or irregularities in the exercise of the jurisdiction, although sufficient to render the judgment erroneous, and subject to be reversed or set aside in a proper proceeding for that purpose, do not render the judgment void, and until so set aside it is valid and binding for all purposes. Until set aside in a proper proceeding for that purpose, a voidable judgment has the same force and effect as though no error had been committed; it will support proceedings taken under it, and, as discussed supra, §§ 428–433, it is not subject to collateral attack.[2]

On the subject of collateral attack on judgments, Freeman's work on the Law of Judgments, 5th ed., vol. 1, p. 749, sec. 360, says:

\* \* \* Efforts to avoid the judgment [by collateral attack] must be directed to proving a want of power in the court rendering it. Upon this point the cases are clear. They emphasize the difference between an absence of jurisdiction and the irregular or erroneous exercise of it. The line which distinguishes the two is very definite and is precisely that which denotes the cases where a judgment is reversible only or, on the other hand, may be declared a nullity when interposed collaterally. Consequently it is a firmly established rule of the law of collateral attack that once jurisdiction of the subject matter and the parties is required, no errors or irregularities in the subsequent proceedings which do not induce a loss of such jurisdiction will avail to defeat the judgment.[3]

and in the leading case of *McGoon* v. *Scales*, 9 Wall. 23, 19 L. ed. 545, the Supreme Court of the United States said:

\* \* \* But the doctrine of this court, and of all the courts of this country, is firmly established, that if the court in which the proceedings took place had juris-

---

[2] See also Black on Judgments, 2nd ed., vol. 1, § 245, wherein it is said:

"Where the court has jurisdiction of the parties and the subject-matter in the particular case, its judgment, unless reversed or annulled in some proper proceeding, is not open to attack or impeachment, by parties or privies, in any collateral action or proceeding whatever."

The same principle is stated in Restatement of the Law of Judgments, Ch. 2, Sec. 4, pp. 20–21, as follows: "\* \* \* A judgment is not void merely because it is erroneous and subject to be set aside by the court which rendered it or to be reversed by a higher court in appellate proceedings. Nor is it void merely because it is subject to attack by independent proceedings in equity. Such judgments, although subject to direct attack either by further proceedings in the original action or by independent equitable proceedings, are not subject to collateral attack. On the other hand, if the requirements for the validity of a judgment are not complied with, that is if the judgment is void, it is not merely subject to direct attack but is subject to collateral attack."

[3] Black on Judgments, 2d Ed., Vol. 1, Sec. 246, states the rule thus:

"The rule against collateral impeachment applies to every judgment, order, decree, or judicial proceeding, of whatever species, that is not absolutely void. If the judgment is void on its face it is of course a mere nullity and of no avail for any purpose, and this may be urged against it whenever it is brought in question. But otherwise, whether it be regular or irregular, correct or erroneous, valid or voidable, it is not subject to collateral attack."

diction to render the judgment which it did, no error in its proceedings which did not affect the jurisdiction will render the proceeding void; nor can such errors be considered when the judgment is brought collaterally into question.

One final matter remains to be considered. The defendant contends that the reasoning of the second division of this court in the case of *Mitsubishi Shoji Kaisha, Ltd.* v. *United States*, 8 Cust. Ct. 199, C. D. 603, applies to the case at bar. We have carefully read the opinion of the court in that case and are satisfied that it not only does not support the defendant's position herein, but is authority *contra*.

In that case the merchandise involved in two importations was originally classified as woven fabrics in the piece, wholly or in chief value of silk, not specially provided for, and duty was assessed thereon at the rate of 55 per centum ad valorem under the provision therefor in paragraph 1205 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. §1001, par. 1205). Against the collector's action there were filed two protests claiming the merchandise to be properly dutiable at the appropriate rate or rates under the provisions of paragraphs 903, 904, and 905 of the said act, as cotton cloth containing silk. These two protests were sustained by a decision of the second division reported in 5 Cust. Ct. 398, Abstract 44750, the judgment in which contained the following language:

It is hereby ordered, adjudged and decreed: that the claim in the two suits listed above that the items of merchandise upon which duty was levied at 55 per cent ad valorem under paragraph 1205 of the Tariff Act of 1930, are properly dutiable at the appropriate rate, according to thread count and other statutory requirements, under paragraphs 903, 904, and 905 of said Act, is sustained, and the collector of customs at Los Angeles will reliquidate the entries accordingly.

Upon reliquidation of the entries, the collector, *in compliance with the judgment, proceeded as directed therein* to assess duty at the appropriate rates, according to the number of thread counts and other statutory requirements under paragraphs 903 and 904, plus 5 per centum ad valorum under paragraph 905 of said act. In addition thereto, he also assessed duty at 10 cents per pound on the cotton contained therein under paragraph 924 of the same act, which reads as follows:

All the articles enumerated or described in this schedule (except in paragraph 922) shall be subject to an additional duty of 10 cents per pound on the cotton contained therein having a staple of one and one-eighth inches or more in length.

Against this latter action protest was filed and formed the subject of the decision in the *Mitsubishi* case reported in 8 Cust. Ct. 199, *supra*. During the course of its opinion in that case the court was careful to point out that *the collector had proceeded in strict accordance with the judgment;* that he had done everything the judgment called for, and the fact that he had done something in addition, not prohibited by the judgment, was not in disobedience of the judgment.

This is certainly not the situation in the case at bar. Here the collector, given directions to reliquidate the entries at specific rates of duty in exact monetary terms, as counsel for the defendent concedes, did not follow the directions contained in the judgment, but, on the contrary, proceeded to reliquidate at an entirely different rate not found in the judgment at all. His action in so doing was illegal and the reliquidation was void to that extent. 25 C. J. S. p. 316, § 157.

Reliquidation of any items under the 50 per centum ad valorem clause would necessarily result in the imposition of a higher duty than provided for by the precise and exact directions contained in the judgment in protests 4095–K, etc.

The *Mitsubishi* case, in fact, stands for the proposition that the collector must obey the court's judgments and proceed in strict compliance therewith, and nowhere in the court's opinion is there any holding or principle announced directly or indirectly that the collector, after a provision of the tariff act has been interpreted by this court and such interpretation reduced to judgment, in reliquidating the entry involved in said judgment, may interpret the tariff act and the congressional mandates therein contained in violation or disobedience of the court's judgment and its orders and directions. Any such holding would violate the plain and certain provisions of section 515, *supra*, which provide that after judicial review by this court the judgment of this court "shall be final and conclusive upon all persons" and would further violate the provision that "the collector * * * shall take action accordingly."

The real issue in this case is whether the judgments of this court, whether valid or erroneous, are conclusive and binding upon all persons until set aside, vacated, annulled, or reversed in the manner provided by law. The decisions and authorities are in overwhelming support of the principle that the judgments of this court are final and conclusive upon the parties, must be obeyed by them and their privies, agents, and officers, and may not be construed except by the courts themselves.

Judgment must therefore issue sustaining the protest claims and directing the collector to proceed in strict accordance with the mandate and the directions contained in the original judgment in protests 4095–K, etc.

It is so ordered.

### CONCURRING OPINION

OLIVER, Presiding Judge: I concur in the result reached by Judge Mollison herein and in the legal basis for his conclusion. In thus concurring, I am satisfied that the collector, in reliquidating as he did, believed that he was proceeding in conformity with the spirit and intent of, rather than contrary to, the mandate of this court.

## 113

COLE, Judge: The difficulty in this case is with the proviso in paragraph 1532 (a) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 1532 (a)), reading *"Provided further,* That all the foregoing shall be dutiable at not less than 50 per centum ad valorem," and a similar proviso embodied in said paragraph, as modified by the Czechoslovakian Trade Agreement, 73 Treas. Dec. 454, T. D. 49458, the sole issue being whether the collector, in applying said provisos to the reliquidation of the entries in question, violated the strict language of the judgment of this court rendered in protests 4095–K, etc., the decision in which is reported as *Aris Gloves, Inc.* v. *United States,* 13 Cust. Ct. 304, Abstract 49794.

I would much prefer to approve the reliquidation of these entries just as the collector computed, because I believe the Court of Customs and Patent Appeals in *United States* v. *Aris Gloves, Inc.,* 31 C. C. P. A. 169, C. A. D. 268, upon which the decision in Abstract 49794, *supra,* was based, meant to apply said paragraph 1532 (a), in its entirety, and assumed that any judgment thereunder, or any other judgments such as the one rendered in protests 4095–K, etc., would do likewise.

The stipulation upon which protests 4095–K, etc., were submitted, attempted to apply, and did state, a rate taken from paragraph 1532 (a), *supra,* but neglected to make mention of the proviso carrying the minimum rate of 50 per centum ad valorem, and the decision, Abstract 49794, *supra,* following the stipulation, as well as the judgment issued thereunder, followed the literal language of the stipulation.

There is abundance of authority to the effect that where a judgment is susceptible of two interpretations, everything should be done to make the judgment agree with the facts and law of the case, and that a judgment must be determined from that which preceded it and that which it was intended to execute. See 49 C. J. S. § 436.

In the oral argument of the present case, however, Government counsel, by his statements, left considerable doubt with me as to whether the proviso in question was before the appellate court in the *Aris Gloves, Inc.,* case, C. A. D. 268, *supra,* and intended to be included in the purpose and intent of the stipulation in protests 4095–K, etc., as definitely as I have felt was the case, and that what the collector did in invoking said proviso could be defended legally on the ground that while the action of the collector was not strictly in accordance with the letter of the judgment, yet what he did was within the four corners of the judgment and executed the intent and purpose thereof.

I find it advisable, in the light of this statement, to quote from the transcript of the oral argument in this proceeding on June 10, 1947, when Government counsel answered a question by the court as to

whether the proviso was intended to be included in the reasoning of the appellate court (p. 37):

> It probably was an oversight on my part, and no one else's because I argued this case in the Court of Appeals and I didn't pick that thing up, and I will be perfectly frank with Your Honor to say that at the time I read that opinion for the first time, I never gave it a thought because I was concerned with this issue which the court had determined as to whether these were machine seamed gloves or gloves seamed by hand.   *   *   *   That is the thing that occupied my attention.   I didn't pay any attention to this at the time [meaning the proviso].

Later, at the same oral argument, Government counsel, referring to the stipulation upon which the decision in said Abstract 49794 was based, had this to say (p. 38):

> Now I want to say a word about the stipulation.  Let all the blame for signing that stipulation descend upon our heads.  We shouldn't have signed it in that form because that stipulation as drawn does something very improper, and I don't mean anything in disrespect of any adversary whom I suppose drew it, because it is perfectly consistent with her position in this case, but that stipulation assumes to tell this court what the Court of Appeals held in the test case.

In answer to a question by the court as to whether the collector had a right to resolve the doubt as to what the appellate court decided and what the judgment of this court intended or purported to be, Government counsel stated (pp. 48–49):

> That perhaps is the question as to which Your Honors are the final judges. I submit, with due deference, and in the situation confronting the collector in this matter, that his conduct was proper.  Perhaps he could have gone at it another way, which would have been better.  I wish he had.  We wouldn't have been here.  But this is what he did.  And in doing so, he gave this plaintiff everything that the law intended this plaintiff to have.  He was puzzled.  I can stop there.  He was puzzled.  He interpreted the judgment.  He construed the judgment, and he construed it more or less along this theory: When the collector assessed $7.50 per dozen pairs, as he did, that made up an amount of money which was more than 50% ad valorem, so it was unnecessary, either for the collector or anybody else, including this court and the Court of Appeals to determine mathematically whether the 50% proviso should apply.  That never came up.  *That question of whether the 50% proviso should apply never came up in the test case and it never came up until the Court of Appeals held that these were gloves which should be classified under the first part of the Tariff Act of 1930 and not under any trade agreement at all.*  That made a rate of $5.50 per dozen pairs the specific rate applicable.  Now that is as far as this court had to go at any time.  It was just to decide that, and from that point on it became the obligation of somebody to determine it, and this came up for the first time, to determine whether $5.50 per dozen pairs was more or less than 50% ad valorem, and the collector assumed that it was up to him, and that's what he did.  [Italics mine.]

These statements by defendant's counsel, who has participated in these cases from the outset, create sufficient doubt for me to withhold approval of the action of the collector.

The position of defendant's counsel is coupled with firm and positive oral argument by counsel for plaintiff that the proviso under discussion was not only not intended to be before the court—as I have felt

was the case—but also if it had been considered, the decision would have been contrary to the construction placed thereon by the collector.

In sustaining the protests herein, I do so with no criticism of the collector in the course followed in reliquidating these entries. I am strongly of the opinion that the proviso which the collector applied should have been included in the judgment, and that the record in this case supports such a position. It is unfortunate that, through inadvertence—as I view it—such was not done. I find no occasion in this proceeding, either directly or indirectly, to brand or characterize the action of the collector as deliberate disobedience to a judgment of this court.