AIRCO, INC.

v.

UNITED STATES.

C.R.D. 79–9; Court No. 76–3–00643.

United States Customs Court.

April 16, 1979.

**1328**

Frederick L. Ikenson, Washington, D. C., for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (Sheila N. Ziff, New York City, trial attorney), for defendant.

## OPINION TO ACCOMPANY ORDER

### RICHARDSON, Judge:

This is an action to review a negative countervailing duty determination of the Secretary of the Treasury, authorized under 19 U.S.C.A., section 1516(d), in which plaintiff moves to depose defendant through its agents, Lynn J. Barden, an attorney-adviser in the Office of the General Counsel, United States Department of the Treasury, and R. Theodore Hume, an Assistant Chief Counsel, United States Customs Service (formerly an attorney-adviser in the Office of the General Counsel, United States Department of the Treasury), and to depose one Peter O. Suchman, formerly Deputy Assistant Secretary of the Treasury, and further, to require the deponents to bring with them all documents and tangible things in their possession or under their control, not previously furnished by defendant to plaintiff's counsel in this action, relating to the countervailing duty case of *Ferrochrome from South Africa.*

In support of the motion plaintiff avers that Mr. Suchman was not only the senior Treasury Department official directly responsible for overseeing the administration of 19 U.S.C.A., section 1303—the countervailing duty statute, but in his capacity as Acting Assistant Secretary of the Treasury, issued the final negative countervailing duty determination the subject of this litigation, that Mr. Barden not only participated in an investigatory, advisory, and/or analytical capacity in the subject countervailing duty investigation, but was identified by defendant in plaintiff's interrogatories as one of the persons consulted (together with Mr. Suchman) for the purpose of making responses to the interrogatories, and that Mr. Hume was identified by defendant in said interrogatories as the person responsible for collecting, compiling, and furnishing to the Justice Department, the information which is the basis for defendant's answers to plaintiff's interrogatories, and who also participated, in consultation with Mr. Barden, in the preparation of the answers to the interrogatories. Plaintiff asserts that it seeks to examine deponents principally with respect to the Treasury Department's reasons for issuing a negative determination in the countervailing duty case, certain memoranda written by deponents, and certain answers given in response to plaintiff's interrogatories, especially Nos. 1, 4 and 11, which, in the judgment of plaintiff's counsel, require clarification and amplification, all with a view toward discovering relevant evidence.

Defendant opposes the motion and, in the alternative, cross-moves for a protective order limiting the scope of the depositions. In support of its opposition and cross-motion, defendant asserts that the scope of judicial review in this action is limited to the administrative record, that the depositions sought constitute improper attempts to probe the mental processes of the administrative decision-maker and his attorney-advisers, that Messrs. Barden and Hume are *employees* of the United States whom plaintiff improperly seeks to examine as *agents,* and that should the depositions be allowed, plaintiff should not be permitted to (1) inquire into any matters which are not part of the administrative record, (2) inquire into advisory opinions, recommendations or reasons therefor, (3) inquire into deponents' mental or thought processes, (4)

inquire of Messrs. Barden and Hume into matters concerning which they served as attorneys to defendant or which are otherwise outside the scope of their employment as *employees* of defendant, and (5) inquire into any matters other than deponents' personal knowledge of the circumstances of the making and maintenance of the administrative record.

In response to defendant's opposition and cross-motion, plaintiff maintains that the scope of judicial review of the Secretary's negative countervailing duty order is trial *de novo*, that even if the scope of judicial review herein is limited, the mental processes of the administrator may be probed if he has left no other record of the reasons for his decision—in order that the rationale behind the determination under review may be ascertained, that defendant erroneously assumes that the lawyer-client privilege attaches to all communications between lawyer and client, and that Messrs. Barden and Hume did act as agents for defendant when they functioned as such in responding to interrogatories directed to defendant.

The court is inclined to agree with plaintiff. As defendant's counsel points out in her memorandum (p. 5), the character of proceedings conducted by the Secretary of the Treasury under the countervailing duty statute is *investigatory*. However, proceedings in a judicial tribunal such as the Customs Court are *adversarial* in nature.

The defendant asserts that it has "consistently and persistently vigorously espoused its position" * limiting the scope of judicial review of the Secretary of Treasury's determination as to the payment or bestowal of a bounty or grant *dehors* the administrative record in the various countervailing duty actions instituted in the Customs Court. It appears to this member of the court that the espousal is of recent vintage, following the Trade Act of 1974, which for the first time gave the Customs Court jurisdiction to review negative determinations of petitions for the imposition of countervailing duties. In fact, even when the Board of General Appraisers, the predecessor of the Customs Court, was structured within the Department of the Treasury, the appellate courts held that the board "is a judicial tribunal, clothed with judicial powers to determine the classification of imported goods and the duty which should be imposed thereon", *United States v. Kurtz, Stuböeck & Co.*, 5 Ct.Cust.App. 144, 146, T.D. 34192 (1914); that "[i]ts powers and functions are judicial, its process, forms, and practice are judicial, and its decisions and judgments have the force and conclusiveness of those of other courts", *United States v. Macy & Co., Inc.*, 13 Ct.Cust.App. 245, 249, T.D. 41199 (1925); and, significantly, that although affidavits of antiquity authorized under regulations issued by the Secretary of the Treasury were final in the first instance for the purposes of entry, upon protest before the board "the question of antiquity comes on for hearing *de novo*, like other cases", *United States v. Thomas*, 3 Ct.Cust.App. 142, 145, T.D. 32385 (1912).

And, consistent with these holdings, the Court of Customs and Patent Appeals has held with respect to cases arising in the Customs Court that "the Secretary of the Treasury is not authorized to prescribe the character of proof required in proving issues before the trial court", *United States v. C. J. Holt & Co., Inc.*, 17 CCPA 385, 387, T.D. 43822 (1930); and "[t]he Customs Court is a court of justice, and the same rules of evidence apply there as in courts of general jurisdiction", *W. T. Grant Company v. United States*, 38 CCPA 57, 61, C.A.D. 440 (1950).

Thus, it is clear that when operating under the same *mandatory* statute such as the countervailing duty statute, the *adversarial* character of the judicial proceeding under the statute emerges in sharp contrast to the *inquisitorial* character of the prior administrative proceeding under the statute and under which, in the words of defendant's counsel (memorandum, p. 5) "the 'interested

---

* See defendant's memorandum, page 2, on motion to stay proceedings, denied April 5, 1979.

parties' who do appear may present facts which the Secretary may find of interest and assistance to him, but have no right of cross-examination." Before the Customs Court in a section 1516(d) civil action, the United States represents but one of two parties in an *adversarial* proceeding. And, although the administrative record may be the measure of the Government's input into that *adversarial* proceeding, it can hardly have been intended by the Congress that such a record also be the measure of input into such proceeding on the part of the Government's adversary—consistent with the expressed congressional intent in this new legislation, the Trade Act of 1974, to place the American manufacturer on an equal footing with his counterpart, the American importer, insofar as judicial remedies are concerned, and of whose judicial remedies the Congress was undoubtedly aware. See *Energetic Worsted Corp. v. United States*, 53 CCPA 36, 42, C.A.D. 874 (1966), *reversing Energetic Worsted Corp. v. United States*, 51 Cust.Ct. 55, C.D. 2413 (1963), where, at the instance of an American importer and upon a *plenary trial record*, the Court of Customs and Patent Appeals rejected a bounty finding determination of the Secretary of the Treasury [whose determination was supported by a majority of judges on a Customs Court panel] upon a finding that the Secretary's determination was not supported by *substantial evidence*.

Certainly, it can scarcely have been the intention of Congress to radicalize the traditional nature of judicial proceedings in the Customs Court solely on the occasion of expanding the remedies available to a segment of the American public in that court, without expression of a purpose to do so. And nothing but the most cogent expression of views in this direction, totally lacking in the legislative history of section 1516(d), would warrant such a conclusion.

Assuming, without admitting, as defendant contends, judicial review of the negative countervailing duty determination rendered by the Secretary of the Treasury,

reported at 41 Fed.Reg. 1298 (1976), is limited to the administrative record, still, in order for judicial review in this action to be meaningful, the court needs to know the reasons which prompted the Secretary to act in the manner he did. After reading the Secretary's final decision in the case the court is convinced that the terseness of its conclusory language leaves something more to be desired relative to the underlying basis for the determination.

Discovery is a useful tool with which to amplify an otherwise meager administrative record. Indeed, its employment by plaintiff prior to the instant motions has resulted in the identification of individuals whose activities in government service place them, in the court's judgment, in such high levels of policy-making endeavor in relation to the determination under review as to make them privy to relevant factual material, if it exists, and characterize them as *agents* (Messrs. Barden and Hume), and, therefore, amenable to additional discovery procedures in such capacity.

The proposed discovery does not, in the court's view, exceed permissible limits or warrant protective measures at this point. Defendant's fears in this regard are at best anticipatory and premature, and certainly not grounded in any factual basis. Even factual material contained in deliberative memoranda is discoverable if susceptible to severance from its context. See *A. O. Smith v. Federal Trade Commission*, 403 F.Supp. 1000, 1015 (1975). And should any improper question be propounded during the examinations, defendant's remedies are ample and accessible at such a time.

For the reasons stated, plaintiff's motion is granted and defendant's cross-motion is denied.