## MASSON *v.* UNITED STATES (No. 222).[1]

DATE OF INVOICE USED IN COMPUTING VALUES OF TWO DIFFERENT CURRENCIES.

Where merchandise was shipped on September 28, but was entered at the port of entry in the United States under an invoice dated and certified at the port of shipment October 1, the date of the invoice controls, and the proportion between the standard of values in the two countries as fixed by the United States Treasury Department for the quarter beginning October 1 governs in computing the actual money value of the imported goods.

### United States Court of Customs Appeals, January 7, 1911.

TRANSFERRED from United States Circuit Court, District of Maryland (T. D. 29278).

[Affirmed.]

*McLaughlin, Russell, Coe & Sprague (Edward P. Sharretts* of counsel) and *Gans & Haman* for appellant.

*D. Frank Lloyd,* Assistant Attorney General (*Chas. E. McNabb* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

SMITH, Judge, delivered the opinion of the court:

On September 28, 1907, 902 rolls of matting destined for the United States were shipped from Canton, China. The matting arrived at Baltimore and was entered for duty on December 3, 1907, under an invoice dated and certified by the consul general at Canton on October 1, 1907. In due course the merchandise was appraised and the actual market value and wholesale price thereof in the country from which it was imported was fixed at the invoice value of 20¾ cents Hongkong currency per square yard. This valuation, when converted into United States money on the basis that $0.538 United States currency equaled $1 Hongkong currency, the rate proclaimed by the Secretary of the Treasury for the quarter which began October 1, 1907, brought the value of the matting to a fraction more than 10 cents a square yard, United States currency. The collector therefore assessed duty on the goods at 7 cents a square yard and 25 per

---

[1] Reported in T. D. 31209 (20 Treas. Dec., 68).

cent ad valorem under the provisions of paragraph 333 of the act of July 24, 1897, which reads as follows:

333. Floor mattings, plain, fancy or figured, manufactured from straw, round or split, or other vegetable substances not otherwise provided for, including what are commonly known as Chinese, Japanese, and India straw mattings, valued at not exceeding ten cents per square yard, three cents per square yard; valued at exceeding ten cents per square yard, seven cents per square yard and twenty-five per centum ad valorem.

The importer protested that the appraisement of 20¾ cents Hongkong currency per square yard should have been converted by the collector into United States money on the basis that $0.522 United States currency equaled $1 Hongkong currency, the official rate in force on September 28, 1907, the date of actual exportation. On the basis claimed by the importer the value of the matting would have been slightly less than 10 cents United States currency per square yard, and the goods would have been dutiable at 3 cents a square yard under the provisions of the paragraph already cited. The Board of General Appraisers sustained the collector, and the importer appealed to the United States Circuit Court for the District of Maryland, which appeal has been transferred to this court for determination in accordance with the provisions of the tariff act of August 5, 1909.

On the hearing before the Board of General Appraisers a letter, dated January 17, 1908, received by the collector of customs at Baltimore from the consul general at Canton was submitted by the appellant, from which it appears that an invoice for the shipment of matting dated September 28, 1907, and certified by the consul on that day, incorrectly stated the quantities shipped. The letter further discloses that on discovering the mistake the shippers, instead of requesting a "replace invoice," presented to the consul general an entirely new invoice accurately describing the consignment, which invoice was certified by that official on October 1, 1907, the day of its date and presentation.

There is but one point in this case, and that is whether the value of Hongkong currency proclaimed for the quarter beginning October 1, 1907, or that proclaimed for the quarter ending September 30, 1907, should be followed in estimating the value of the importation.

Under the terms of section 2 of the act of June 10, 1890, it is provided—

That all invoices of imported merchandise shall be made out in the currency of the place or country from whence the importation shall be made.

Section 10 provides:

That it shall be the duty of the appraisers of the United States * * * to ascertain, estimate, and appraise the actual market value and wholesale price of the merchandise *at the time of exportation to the United States* in the principal markets of the country whence the same has been imported.

Article 1246 of the Customs Regulations issued by the Treasury Department in 1899 makes it—

The duty of the appraiser or officer acting as such to make careful examination of any merchandise which the collector designates for that purpose and to appraise the actual market value or wholesale price thereof at the time of exportation in the principal markets *and in the currency of the country whence the same was imported.*

Section 13 of the act of June 10, 1890, requires that—

The appraiser * * * shall report to the collector his decision as to the value of the merchandise appraised.

Section 25 of the act of August 27, 1894, provides that—

The values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint, and be proclaimed by the Secretary of the Treasury * * * quarterly on the 1st day of January, April, July, and October in each year. *And the values so proclaimed shall be followed in estimating the value of all foreign merchandise exported to the United States during the quarter for which the value is proclaimed, and the date of the consular certification of any invoice shall, for the purposes of this section, be considered the date of exportation.*

Under the Treasury Regulations it is made the duty of the *collector* to reduce the foreign currency of the appraisement to its equivalent in United States money.

Considering these provisions of law and the Treasury Regulations promulgated for carrying them out, it is very evident that the appraisement of the actual market value and wholesale price of merchandise *at the time of exportation to the United States,* which is required to be made in the currency of the country from which the merchandise is exported, is a distinct proceeding from the conversion by the collector of that valuation into United States money for the purposes of assessing duty.

In a word, it is the duty of the appraisers to value goods as of the time of actual exportation and in the currency of the country from which they are imported. The duty of the collector, on the other hand, is to convert that valuation into United States currency at the official rate in force for the quarter *of the actual date of the invoice* upon which the merchandise has been entered, which date, for the purposes of currency conversion, is made by statute the date of exportation. In this case the appraiser appraised the matting at 20¾ cents, Hongkong currency, a square yard, the invoice value, and no claim has been or could be made that that was not the value of the merchandise at the time of exportation. The record shows that the collector converted the appraised value into United States currency at the rate fixed for the quarter beginning October 1, 1907, the date of the invoice upon which the entry of the goods was actually made. In so doing the collector complied with the mandate of the statute and therefore committed no error.

The letter addressed to the collector by the consul general at Canton was received subsequent to the conversion and after appeal to the Board of General Appraisers. But even if it had been received prior to liquidation of the entry the communication was entirely extra-official, and there is nothing in the statute which would permit the collector to accept it in lieu of a corrected or replace invoice, much less to substitute for the actual date of the invoice on which the goods were entered the date of an invoice which was not a part of the official record upon which he was required to act. Why Congress fixed the date of the invoice as the date of exportation for the purposes of currency conversion is not very clear. It is probable, however, that the fixing of a positive date for converting foreign-currency values was induced by a desire to give shippers and importers at the time of acquiring the goods definite and certain information as to the value thereof in United States currency, and consequently of the amount of duty which they would be required to pay. However, whatever was the motive of the legislature in that behalf, the provision that valuations in foreign currency shall be converted as of the date of the invoice is mandatory, and neither the collector nor the courts have any right to disregard it. United States v. Lawrence (137 Fed. Rep., 466).

What would be the effect of the presentation of a pro forma or corrected invoice it is unnecessary to decide. No such invoices were presented to the collector in this case.

The decision of the Board of General Appraisers is *affirmed*.