(C. D. 2048)

Nozaki Bros., Inc.
Frank P. Dow Co., Inc., et al. } v. United States

United States Customs Court, Third Division

(Decided November 26, 1958)

*Lawrence & Tuttle* (*George R. Tuttle, Dan Hedin,* and *Frank L. Lawrence* of counsel) for the plaintiffs.

*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector* and *Joseph E. Weil,* trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges; JOHNSON, J., concurring; DONLON, J., dissenting

RICHARDSON, Judge: These four consolidated cases involving Japanese canned clams are before us a second time, having been restored to the calendar by the order of this court for the production of further evidence. See *Nozaki Bros. Inc., and Frank P. Dow Co., Inc., et al.* v. *United States,* 36 Cust. Ct. 398, Abstract 59833.

The action arose as a result of the failure of the collector at the port of Los Angeles to use as a basis for the assessment of duties in liquidation, the dutiable value of the merchandise as found by this court in reappraisement proceedings. These values were incorporated in a decision and judgment, dated December 2, 1952, entitled *Pacific Trading Co., Inc., et al.* v. *United States,* 29 Cust. Ct. 501, Reap. Dec. 8179.

At the original hearing of the cause, it was established that after the decision and judgment in the aforementioned reappraisement proceedings had been transmitted to the collector, a clerk in the customs service, whose duty it was to note the judgment of the court on the records of the collector, erroneously stamped the involved entries and the invoice summary sheets to indicate that the reappraisement appeals had been dismissed. We append hereto a photostatic copy of the judgment of the United States Customs Court involved herein. The collector later proceeded to liquidate the entries using as the dutiable value of the merchandise, the value as found by the appraiser. The liquidations took place between the dates of May 14 and July 15, 1953.

The plaintiffs did not protest the liquidations within 60 days thereafter, but considered the erroneous action of the clerk in stamping the entries "dismissed" to be a clerical error, and requested correction thereof by way of reliquidation of the entries pursuant to 19 U. S. C. section 1520 (c) (1) (§ 520 (c) (1) of the Tariff Act of 1930), as amended by the Customs Simplification Act of 1953. That section of the act

## JUDGMENT

# United States Customs Court

|  |  |
|---|---|
| PACIFIC TRADING CO., INC., ET AL., | Los Angeles, Calif. |
| Plaintiffs, | Reappraisement No. 115141-A, etc. |
|  | Collector's No. 3520, etc. |
| UNITED STATES, | Entry No. 3380, etc. |
| Defendant. | (Schedule "A" hereto attached and made a part hereof.) |

Chief
THIS CASE having come on for trial before Judge Oliver

sitting on reappraisement, and having been heard and submitted for decision, and the Court, after due deliberation, having rendered a decision herein, now in conformity with said decision,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the American selling price, as that value is defined in section 402(g) of the Tariff Act of 1930, is the proper basis for the determination of the value of the merchandise described on the invoices as clams in 5-ounce cans or tins, or clams in 8-ounce cans or tins, and marked "A" and initialed CEC by examiner C. E. Slouse, and

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that such values, for merchandise exported during the specified periods, are as follows:

| 5-ounce size | per dozen | |
|---|---|---|
| January 1, 1934 to May 31, 1935 | $1.00 | ) |
| June 1, 1935 to November 30, 1936 | .90 | ) less |
| December 1, 1935 to April 30, 1937 | .95 | ) 1 1/2 per |
| May 1, 1937 to March 15, 1941 | 1.00 | ) centum |
|  |  | ) cash |
| 8-ounce size |  | ) discount. |
| March 1, 1937 to December 31, 1940 | 1.65 | ) |

Insofar as the appeals relate to all other merchandise they are hereby dismissed.

Chief Judge, U. S. Customs Court

Dated at New York, this the day

authorizes the Secretary of the Treasury to refund duties or other receipts in certain specified cases and further provides in part that:

. . . . . . .

(c) Notwithstanding a valid protest was not filed, the Secretary of the Treasury may authorize a collector to reliquidate an entry to correct—

(1) a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, appraisement, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the customs service within one year after the date of entry, appraisement, or transaction, or within sixty days after liquidation or exaction when the liquidation or exaction is made more than ten months after the date of the entry, appraisement, or transaction;

On the second hearing, it was established by the testimony of the acting deputy collector of customs in charge of the liquidating division in the office of the collector of customs at Los Angeles that a request for reliquidation based on clerical error had been made by counsel for plaintiffs in a letter, dated October 16, 1953, which was received by the collector and forwarded to the Bureau of Customs on October 23, 1953. This request was denied on April 30, 1954. The instant protests were filed on June 28, 1954, within 60 days of this refusal.

In the first hearing, the case was before the court on a motion of Government counsel to dismiss for untimeliness, but the court did not enter a judgment on the motion. The court felt itself called upon to determine whether the protests were timely under the provisions of section 520 of the Tariff Act of 1930, as amended. It stated, ". . . the action of the customs clerk may very well be considered a 'customs transaction,' within the meaning of the statute. Therefore, if it was brought to the attention of the customs service within 1 year after such 'transaction,' the present protests are timely." The court could not determine either from the official papers or the oral evidence whether the "mistake of fact" in the action of the customs clerk (which the court found to be a customs transaction) had been brought to the attention of the customs service within 1 year after the transaction, and restored the case to the docket in order that this evidence might be supplied.

The plaintiff in the first hearing and in its brief at the close of the second hearing continued to contend that the liquidations were void since the collector did not comply with the decision of the court in *Pacific Trading Co., Inc., supra.*

Counsel for the Government at the original hearing and by incorporation of defendant's first brief after the second hearing, moved to dismiss the protests as untimely because not filed within the 60-day period after the liquidations as prescribed in 19 U. S. C. section

1514 (§ 514, Tariff Act of 1930). This section provides for protest within 60 days after (but not before) "liquidation, reliquidation, decision, or refusal" of all exactions of every character *within the jurisdiction of the Secretary of the Treasury.* The cases are before us on this motion to dismiss.

The court, in its opinion rendered after the first hearing, discussed cases on the matter of timely protests against void reliquidations. It did not make a decision or enter a judgment on the issue involved here, which is the timeliness of a protest against a void liquidation involving the failure of the collector to follow a valid decision or judgment of the United States Customs Court.

Plaintiffs predicate their right to be relieved from the burden of the additional duties imposed as a consequence of the failure of the collector to give effect to the reappraisement judgment in liquidating the entries herein on two grounds.

The contention is first made that since the entries were not liquidated in accordance with the mandate of the court as contained in the reappraisement decree, the liquidations are void *ab initio.*

The second contention of plaintiffs is that all of the elements necessary to bring the case for the plaintiffs within the requirements of section 1520 (c) (1), *supra,* are present, and, therefore, the Secretary of the Treasury, or the official to whom the authority had been lawfully delegated, was required to authorize the collector to reliquidate in conformity with the mandate of the court on reappraisement; and that the denial of relief thereunder on the ground that a timely protest had not been filed under section 1514, *supra,* constituted error as a matter of law, since by the express terms of the statute, the Secretary may order reliquidation "notwithstanding a valid protest was not filed."

Counsel for the defendant argues that the right of the Secretary of the Treasury to make refunds under section 1520 (c) (1), *supra,* is discretionary; that his decisions thereunder are final and not subject to judicial review.

This is a case of first impression in that it is the first instance in which the United States Customs Court *unquestionably had jurisdiction* of the subject matter pursuant to a *timely appeal in a reappraisement matter* and entered a *valid judgment,* which was not followed by the collector in *liquidating* the entries covered thereby. This court has been confronted with situations, however, in which the collector has failed to *reliquidate* entries in conformity with a valid judgment rendered in a protest proceeding. See *Aris Gloves, Inc.* v. *United States,* 20 Cust. Ct. 102, C. D. 1091; *Herrmann* v. *United States,* 6 Treas. Dec. 447, T. D. 24459. In the cited cases, the court held that the action of the collector in reliquidating the entries involved in a

manner that did not accord with the mandate of the court was null and void. The plaintiffs contend that the liquidations in the instant cases are void under the principle enunciated in the *Aris* and *Herrmann* cases, *supra*, since it is an admitted fact that the collector did not follow the judgment of the court in *Pacific Trading Co., Inc.*, *supra*.

We are in complete agreement with the contention of the plaintiffs that the liquidations herein are void. Under 19 U. S. C. section 1501 (§ 501 of the Tariff Act of 1930), the United States Customs Court is given the power, upon timely appeal, to reappraise imported merchandise. 28 U. S. C. section 2636 (a) provides that, in the absence of timely application for review, the decision of a single judge in a reappraisement proceeding "shall be final and conclusive upon all parties." No application for review was made and, therefore, the decision in the *Pacific Trading Co., Inc.*, case, *supra*, became final and conclusive upon all parties. The collector, therefore, as the court said in the *Aris Gloves* case, *supra*, had to "find the basis for his action taken upon the rendition of judgment by this court within the four corners of the judgment," citing 25 C. J. S. page 345, section 181; *O'Connor-Harrison & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 214, T. D. 42239; and *United States* v. *Kurtz, Stuböeck & Co.*, 5 Ct. Cust. Appls. 144, T. D. 34192.

The collector, when reliquidating pursuant to court order, functions in a ministerial or clerical capacity only; he makes no voluntary decision and must follow the judgment of the court to the letter. The decisions so holding are numerous. See *Smith* v. *United States*, 1 Ct. Cust. Appls. 489, T. D. 31527; *United States* v. *Kurtz, Stuböeck & Co.*, *supra*; *Roessler & Hasslacher Chemical Co.* v. *United States*, 13 Ct. Cust. Appls. 451, T. D. 41347; *United States* v. *Edward M. Poons Co. of Kobe, Inc.*, 18 C. C. P. A. (Customs) 283, T. D. 44451; *Wm. Wetstein* v. *United States*, 10 Treas. Dec. 531, T. D. 26848; *Formica Insulation Co.* v. *United States*, 60 Treas. Dec. 576, T. D. 45178; *Bullocks, Inc.* v. *United States*, 68 Treas. Dec. 99, T. D. 47809; *Frank P. Dow Co., Inc.* v. *United States*, 69 Treas. Dec. 336, T. D. 48163; *Los Angeles Trading Co.* v. *United States*, 1 Cust. Ct. 264, C. D. 62; *Fulghum & Co.* v. *United States*, 1 Cust. Ct. 284, C. D. 66; and *Walser Mfg. Co.* v. *United States*, 69 Treas. Dec. 1286, Abstract 34067.

In the *Poons* case, *supra*, the appellate court said:

When, therefore, the Customs Court, on January 29, 1929, adjudged the protest *sustained* as to the items which had been assessed under paragraph 1406 and ordered a reliquidation upon these, it was a judgment which bound the collector and all other parties to the controversy. Equally binding was that portion of the judgment which *overruled* the protest in all other respects. Appellee, of course, might have then appealed, but it could no longer proceed by protesting the collector's action, that action being admittedly in strict conformity with the

judicial decree. The collector's act thereunder was not one involving discretion on his part, either actual or by legal presumption, but was a merely clerical or ministerial act complying with a judicial mandate. The collector made no "decision"; the decision was made for him. It was not made by another administrative officer of the Government, as the Secretary of the Treasury, but by a court; it was not an administrative order, but a court decree. [Italics quoted.]

In *Frank P. Dow Co., Inc.* v. *United States, supra,* the court commented as follows:

. . . we are of the opinion that the collector, being a purely ministerial officer and by statute charged with the administration of the law, is bound to follow the judgments of this court whether he may regard them as right or wrong. He could of course have had the matters in question in the present case called to the attention of this court through an application for rehearing seasonably filed, or, if he so elected, could have had a timely appeal filed from this court's decision. He did neither. Rather, he chose arbitrarily to reliquidate the entry as he deemed proper and to ignore the judgment of this court. To hold such procedure legal would in effect be an attempt to vest in collectors appellate jurisdiction over the judgments of this court. The mere statement thereof manifests the utter absurdity of any such proposition.

We wish to point out that the record contains evidence which indicates that the decree of the court was not intentionally ignored by the collector in this case, but that he liquidated on the basis of the original appraised values through inadvertence. Nevertheless, the collector was bound to conform to the reappraisement mandate and liquidate the entries on the basis of the dutiable values decreed therein. It is conceded by the defendant that this was not done. The judgment of this court, which the plaintiffs had the absolute right to expect the collector to observe, was completely disregarded. The action of the collector in liquidating the entries herein contrary to the reappraisement decision is as ineffective as is his action in reliquidating entries in a manner that does not conform to a judgment.

When we say that the liquidations herein are void, we use the term in its literal and absolute sense, meaning that an act so characterized is an absolute nullity, wholly lacking in legal efficacy, unable in law to support the purpose intended, incapable of ratification, confirmation, or enforcement in any manner or to any degree. See Black's Law Dictionary, 4th edition, 1745; 92 C. J. S. 1024 and cases cited. The term "void" as we here apply it to these liquidations connotes an "utter negativeness which is the equivalent of nonexistence." Void things are in legal effect no things. *Frazier* v. *Jeakins,* 68 P. 24, 28, 64 Kan. 615, 57 L. R. A. 575; *People* v. *Shall,* 9 Cow. (N. Y.) 778, 784; *Lowery* v. *Garfield County,* 208 P. 2d 478, 485, 122 Mont. 571.

It seems to be the position of the counsel for the defendant that even if these liquidations are void, plaintiffs' remedy would be by timely protest, and, in the absence of such protests, the liquidations became final and binding.

The fallaciousness of this argument is readily apparent. If these liquidations are void in the sense that a void act is no act, there have clearly been no liquidations against which protests could be filed. Under the express terms of section 1514, *supra*, protests may not be filed *before* liquidation. Therefore, the protests herein are premature.

A somewhat analogous situation is to be found in the posting cases, wherein this court and the appellate court have repeatedly held that where the notice of liquidation was not given in the form and manner prescribed by the Secretary of the Treasury, the collector had not made a final legal liquidation against which protest could be filed and the statute of limitations did not begin to run. See *United States* v. *Astra Bentwood Furniture Co.*, 28 C. C. P. A. (Customs) 205, C. A. D. 147; *United States* v. *B. Holman, Inc.*, 29 C. C. P. A. (Customs) 3, C. A. D. 164; *Standard Oil Co. of Louisiana* v. *United States*, 33 C. C. P. A. (Customs) 152, C. A. D. 329. In these and other posting cases, the protests have been dismissed as premature, and the court has stated that it is the duty of the collector to liquidate the involved entries in the form and manner required by law. It would be anomalous to say that an act is void and of no effect because it does not conform to an order of an administrative officer and the time within which a statute of limitations is to run does not begin; and at the same time say that when a judicial officer issues an order and it is not followed, the statute, nevertheless, begins to run. Certainly, the valid order of a constitutional court should at least be accorded the same dignity as the order of an administrative agency.

The cases cited by counsel for the defendant in support of its contention that the protests herein should be dismissed for untimeliness are distinguishable from the instant cases on the facts. In none of the cases cited by counsel for the defendant was there a failure on the part of the collector to follow a valid and binding mandate of the court in liquidating entries of merchandise.

In view of our conclusion, it is unnecessary to pass upon other points raised by the plaintiffs. Since there have been no legal liquidations of the entries herein, the protests are untimely because prematurely filed, and must be dismissed. Under the circumstances, it is the duty of the collector to liquidate the entries on the basis of the dutiable values as found by this court in *Pacific Trading Co., Inc., supra*.

Judgment will be rendered accordingly.

## CONCURRING OPINION

JOHNSON, Judge: When this case was first before the court, I concurred in the decision restoring the cases to the docket for the presentation of additional evidence.

Upon further consideration of the issues before us I am of the opinion that it was the duty of the collector to liquidate in accordance with the mandate of this court in the reappraisement proceedings (*Pacific Trading Co., Inc., et al.* v. *United States*, 29 Cust. Ct. 501, Reap. Dec. 8179) and that his failure to do so rendered his liquidations void. *United States* v. *Stegemann*, 12 Ct. Cust. Appls. 198, T. D. 40179; *United States* v. *Mills & Gibb Corporation*, 13 Ct. Cust. Appls. 137, T. D. 40963; *Stubbs* v. *United States*, 7 Ct. Cust. Appls. 399, T. D. 36967; *Lawrence Groom & Co.* v. *United States*, 64 Treas. Dec. 119, T. D. 46559.

Under section 505 of the Tariff Act of 1930, the collector is directed to ascertain, fix, and liquidate the rate and amount of duties as provided by law and to give notice of liquidation in the form and manner prescribed by the Secretary of the Treasury. It has been held that the collector is mandatorily required to give such notice in accordance with the Secretary's regulations; that he has no discretion either as to the form or manner of such notice; and that where he has failed to give notice as prescribed, his liquidation is not final or legal. *United States* v. *Astra Bentwood Furniture Co.*, 28 C. C. P. A. (Customs) 205, C. A. D. 147; *United States* v. *B. Holman, Inc.*, 29 C. C. P. A. (Customs) 3, C. A. D. 164; *Standard Oil Co. of Louisiana* v. *United States*, 33 C. C. P. A. (Customs) 152, C. A. D. 329.

It has also been provided by section 503 (b) of the Tariff Act of 1930, that where, as here, the importer certified that entry was made at a higher rate because of advances made by the appraiser in similar cases then pending on appeal for reappraisement, and if the importer's contention is sustained, wholly or in part, as here, the collector shall liquidate in accordance with the final appraisement. Thus, the collector is required by statute to base his assessment of duties on the final appraised value, and has no discretion or authority to act otherwise. *United States* v. *Stegemann, supra*; *United States* v. *Mills & Gibb Corporation, supra*; *Lawrence Groom & Co.* v. *United States, supra.*

In the instant case, it has been established that the collector did not liquidate on the basis of the final appraised values, as found by the court, but used the original values found by the appraiser. Even though this was due to an error on the part of a clerk in the customs service, the collector's action was in fact outside the authority conferred upon him by Congress under sections 503 (b) and 505 of the Tariff Act of 1930. Therefore, his liquidations are illegal and void.

Under the circumstances, a timely protest might have been filed against the liquidations, thus raising the question of their legal effect. Such protests have been sustained in analogous situations, where liquidations based on illegal or void appraisements have been held void (*United States* v. *Tampa Box Co.*, 15 Ct. Cust. Appls. 360, T. D.

42561; *United States* v. *Alex. Murphy & Co.*, 16 Ct. Cust. Appls. 461, T. D. 43210; *James S. Kean* v. *United States*, 20 C. C. P. A. (Customs) 388, T. D. 46168; *The Gruen Watch Company* v. *United States*, 24 Cust. Ct. 101, C. D. 1216), or in classification proceedings where the collector failed to follow the mandate of the court in reliquidating entries (*United States* v. *Kurtz, Stuböeck & Co.*, 5 Ct. Cust. Appls. 144, T. D. 34192; *Frank P. Dow Co., Inc.* v. *United States*, 69 Treas. Dec. 336, T. D. 48163; *Aris Gloves, Inc.* v. *United States*, 20 Cust. Ct. 102, C. D. 1091).

However, in the instant case, the plaintiffs did not file protests against the liquidations but proceeded under section 520 (c) (1) of the Tariff Act of 1930, as amended, for an authorization from the Secretary of the Treasury to the collector to reliquidate the entries to correct the clerical error made by the clerk stamping the entries to indicate that the appeals for reappraisement had been dismissed. When this request was denied, protests were filed, stating—

The merchandise should have been assessed on the basis of the reappraised value and was not so assessed because of clerical error; your refusal to reliquidate on this basis, on the ground of clerical error, was improper.

It is clear that there was more than a clerical error in the instant case; that the collector's action was beyond his authority under the statute. Consequently, his liquidations must be regarded as nullities. *Stubbs* v. *United States, supra*; *Lawrence Groom & Co.* v. *United States, supra*. Therefore, the protests, which claim that the entries should be reliquidated on the ground of clerical error, must be dismissed. However, it is proper for the court to note that it is the duty of the collector to liquidate the entries in the manner provided by law and on the basis of the final appraised values found by the court. *United States* v. *Astra Bentwood Furniture Co., supra*; *United States* v. *B. Holman, Inc., supra*; *Standard Oil Co. of Louisiana* v. *United States, supra*. The clerical error is in fact immaterial since the collector is required to base his liquidations on the final appraised values and not upon what some clerk has stamped on the papers.

### DISSENTING OPINION

DONLON, Judge: These four cases, consolidated for purposes of trial, and also certain other cases, entitled *Lekas & Drivas, Inc., et al.* v. *United States* (protests 290122–K, etc.), which are contemporaneously before this division for decision, are concerned with the issue whether a liquidation or reliquidation, which fails to comply with a final judgment of this court, is a liquidation or reliquidation which gives rise, under section 514 of the Tariff Act of 1930, to the right of protest.

In the *Lekas* cases, the majority find that certain reliquidations by the collector under section 515 were void, and they uphold the right of

the importers to protest those void liquidations. In the instant cases, the majority find that original liquidations by the collector under section 505 were void, and they deny the right to protest these void liquidations. Inasmuch as I am constrained to differ from the decision of my colleagues in both instances, I shall set forth with some particularity the reasons for my dissent. In essence, it is my opinion that a liquidation or reliquidation which is void, and not merely unlawful, is a nullity; and that protest in such case is premature, under the provisions of section 514.

In the instant cases, I find that the liquidations, although unlawful, are not void. Therefore, they are not null. Not being a nullity, the illegality of the liquidations could have been challenged by timely protest. The collector acted under section 505 in liquidating the instant merchandise, and it is that section which we are here called upon to construe and apply.

The facts in this case are not in dispute. The court, in *Pacific Trading Co., Inc., et al.* v. *United States*, 29 Cust. Ct. 501, Reap. Dec. 8179, entered its judgment (which became final) ordering, adjudging, and decreeing the values in the appraisement of certain canned clams. Thereafter, the collector at Los Angeles proceeded to classify the clams and assess duty thereon, but, in doing this, he neglected or failed to compute duty on the values which the court had decreed. Such neglect or failure was due to the error of a customs clerk in making entry, in the collector's records, of the court decree in the reappraisement appeal. There ensued certain conversations and negotiations between plaintiffs, or their agents, and the collector. A period of more than 60 days elapsed after the liquidations, during which period no protests were filed. Plaintiffs thereafter filed protests, not against the liquidations but against the refusal of the collector to correct the clerical errors.

When these cases were originally tried, this division (at a time when two of the present judges of the third division were not members of the court) found substantially as follows: First, that even if these liquidations were void, timely protest was plaintiffs' remedy; second, that protests were not filed within 60 days after liquidation; and, third, inasmuch as there appeared to the court to be some possibility that proofs might be adduced which, under the provisions of section 520, might afford some relief to plaintiffs, that in order to serve the ends of justice, and so that the intent of Congress in enacting section 520 (c) (1) might be carried out, the cases should be restored to docket "in order that this evidence may be supplied." The court so directed. *Nozaki Bros., Inc., et al.* v. *United States*, 36 Cust. Ct. 398, at page 400, Abstract 59833.

Pursuant to this direction of the court, the cases were restored to

trial term. Evidence was then adduced. This evidence the majority have not considered in reaching their decision. I do consider it.

I am not fully persuaded that these cases are properly reopened for broad review of the prior court decision. That we could do this, and on our own motion, I agree. The majority hold that these cases are now before us for redecision of all issues. Therefore, I base my opinion here on the merits, on that procedural status which the majority opinion asserts.

If I agreed with the majority that these liquidations were void, I would concur also with them that void liquidations are a nullity. I do not, however, find that these liquidations are *void*.

While this may be, as the principal opinion points out, the first case in which original liquidation was at a value other than the value which became *final* by decision of this court after appeal to reappraisement, there have been cases in which liquidation was at a value other than the value which became *final* by unappealed appraisement. There have also been cases in which the issue litigated was whether a *re*liquidation, in which the collector disregarded the judgment order of the court in a controlling protest proceeding, was void and, if void, whether timely protest was plaintiff's appropriate remedy. Several such cases are cited by the majority.

This litigation is not concerned with a *re*liquidation under the judgment order of this court in a protest litigation. The statutory authority under which the collector here acted, in liquidating the entered merchandise, is not the same authority as that under which collectors acted in the litigated *re*liquidation cases cited by the majority.

Our duty here is to construe and apply the legislative intent of Congress with respect to a liquidation under section 505, rather than the legislative intent of Congress, under section 515, with respect to the compliance of collectors with court orders.

Section 505 directs the collector, upon receipt of the appraiser's report and the reports of landing, weight, gauge, or measurement, to "ascertain, fix, and liquidate the rate and amount of duties to be paid on such merchandise as provided by law" and to give "notice of such liquidation in the form and manner prescribed by the Secretary of the Treasury * * *." It has frequently and, so far as research discloses, consistently been held that failure of the collector to "ascertain, fix, and liquidate the rate and amount of duties * * * as provided by law" in original liquidations under section 505, has the effect that the liquidation is unlawful, but not void. The remedy for correction of such illegality is by timely protest under section 514. It has, with like consistency, been held that failure to give notice of a liquidation under section 505 "in the form and manner prescribed by

the Secretary of the Treasury" has the effect that the act of the collector is a nullity, and no right of protest exists as to such a void liquidation. Precedents as to both propositions are numerous and well known, and it is not necessary to encumber this opinion with supporting citations.

The law is clear that the values in appraisement, which are decreed by the court, are the values which the collector should have used in liquidating the rate and amount of duties, as provided by law.

"For the purpose of determining the rate of duty to be assessed upon any merchandise when the rate is based upon or regulated in any manner by the value of the merchandise, the final appraised value shall * * * be taken to be the value of the merchandise." Section 503 (c).

The decision of the court in an appeal to reappraisement "shall be final and conclusive upon all parties," unless application for review is filed, or appeal taken to the Court of Customs and Patent Appeals after such review. (28 U. S. C. A. section 2636.) Here, there was no application for review. Hence, the values found by the court in the reappraisement proceeding (*Pacific Trading Co., Inc., et al.* v. *United States, supra*) are final and conclusive on all parties. Both the plaintiffs and defendant are such parties. That much is conceded.

But this does not determine the issue before us, which is whether the failure of the collector, for whatever cause, to use such values in his liquidations, renders the liquidations null and void, or merely illegal.

Illustrative of the confusion between what is void and what is unlawful, are the headnotes in two cases involving liquidations in which the collector failed to use merchandise values returned by the appraiser.

In *United States* v. *Stegemann*, 12 Ct. Cust. Appls. 198, gelatin was classified in liquidation and duty assessed on the basis of a value different from the value returned by the appraiser. In the opinion *sustaining the protest*, our appeals court said:

* * * If the collector was dissatisfied with the appraisement he had a right to appeal to reappraisement, but he had no right to review the appraiser's finding or to make a new appraisement.

The appraisement furnished to the collector in the language of the statute the data necessary for the classification of the goods and for the ascertainment of the particular rate of duty applicable to the merchandise. Having failed to appeal to reappraisement the collector should have accepted that appraisement as finally determinative of the classification of the goods and should have assessed duties under paragraph 34 in accordance with the minimum and maximum values found by the appraiser. (P. 200.)

Nowhere in the opinion does the court find that the liquidation was void, but the headnote asserts that holding. Obviously, headnotes are not the decision.

Likewise, in *United States* v. *Mills & Gibb Corporation*, 13 Ct. Cust. Appls. 137, the appeals court, *sustaining a protest* against liquidation at a value other than that returned by the appraiser, said:

\* \* \* If an appraisement is unsatisfactory to the collector, he may appeal to reappraisement. If he does not appeal to reappraisement, he must liquidate the entry in accordance with the value returned by the appraiser.

As in the *Stegemann* case, *supra*, the headnote asserts that the action is "void," but that word was not used by the court in its opinion.

The precedents cited in cases construing liquidations under section 515 do not control the construction of the provisions of section 505. The two provisions are fundamentally different, in respect to the powers granted to collectors. Under section 515, Congress has empowered a collector to do two things: First, within 90 days after protest has been filed, to review his decision and either modify or affirm it; and, second, if in a protest proceeding a decision and judgment order have been made and entered by this court, then the collector "shall take action accordingly." It is the latter grant of power in section 515 which is construed in the cases cited by the majority. No other action by the collector in such circumstances is authorized by Congress, save only action according to the judgment order of the court. There is, in section 515, no such broad grant of power to collectors to liquidate, as is found in section 505. Any direction to a collector to reliquidate in section 515 cases is the direction of the court, not the direction of Congress. Hence, purported executive actions of liquidation or of reliquidation, in section 515 cases, which are not in accordance with the decision and judgment order of this court, are without authority. They are null and void because Congress has not authorized them. To be sure, such actions may be said, in a manner of speaking, to be void because they fail to conform to the judgment order of the court, but this is so only in the sense that Congress has seen fit not to grant to collectors the power to reliquidate in those cases in which protests have already been litigated to the point of final judgment of the court, but only the power to act in whatever way the court directs. It is not this court, but Congress, that empowers collectors to act and limits those powers.

It is the intention of Congress which determines whether the *act* of a collector is within his statutory power, and hence effective even though illegal with respect to certain action he has taken, or whether the *act* of a collector lacks statutory authority and hence is null and void.

There is a well-established presumption that customs officials, acting in the discharge of their duties, have acted rightly. This presumption goes both to the effectiveness of the act and the legality of the action taken. It is with respect to the effectiveness of the act that we are

here concerned, because the illegality or "error" of the action that was taken has been conceded. The presumption here has not been overcome, namely, that the collector acted within the jurisdiction conferred on him by Congress in section 505. Hence, I find that the liquidations are not void.

There is no doubt that more than 60 days had elapsed, in all four of these consolidated cases, between the liquidations and the filing of the protests. If plaintiffs stood before us protesting the liquidations, clearly the protests should be dismissed as having been filed too late. But the documents before us do not protest the liquidations. In plain language, they protest the collector's refusal to reliquidate on the ground of clerical error.

Was there clerical error within the meaning of section 520? If there was such error, then have the applicable time requirements of section 520 and of section 514 been met in these cases?

Section 520 authorizes reliquidations, in the interest of the importer, whenever decency and fairness in matters between him and the Government call for the correction of clerical errors, within the scope of the section. Section 514 provides a remedy by timely protest, whenever the collector has refused to correct such an error.

I am of opinion both that clerical error has been shown and that protests against the collector's refusal to reliquidate on the basis of clerical error have been timely filed.

Mr. Marco A. Padilla was called by plaintiffs as their witness. His testimony is that, on and after July 7, 1952, he was the clerk in the "United States Customs Service in Los Angeles" charged with the duty of receiving certified copies of decisions of the court, both in reappraisement and protest proceedings, and of posting these decisions, showing what the decision of the court was. (R. 17, 18.)

Shown a copy of the court decision in reappraisement No. 115141-A (*Pacific Trading Co., Inc., et al., supra*), which the defendant agreed was a proper copy, the following appears in the record of Mr. Padilla's testimony (R. 19, 20):

Q. Mr. Padilla, are you familiar with that decision?—A. Yes, sir.

Q. That judgment, here?—A. Yes.

JUDGE DONLON: That refers to the mandate of the Court in the reappraisement above mentioned?

MR. HEDIN: Yes.

Q. Did you liquidate the entries in accordance with the above-mentioned mandate?—A. I do not liquidate.

Q. Did you note on the records of the Collector of Customs the decision of the Court as stated herein?—A. I did not.

Q. What did you do, Mr. Padilla?—A. Well, I immediately stamped the certified copy of the decision that we received from the Court "dismissed" with the date of December 2, 1952, and I also stamped the Invoice Summary Sheets

with the same notation, "Dismissed December 2, 1952." And, I also stamped the entry jackets with the same stamp—"Dismissed 12/2/52."

Q. The final sentence of the mandate in reappraisement 115141–A reads "Insofar as the appeals relate to all other merchandise, they are hereby dismissed." Did you insert "Dismissed" because of that last word, Mr. Padilla?—A. Yes.

MR. WEIL: Upon the advice of Mr. Schimmer, the Government is ready to stipulate that the error by the Collector's office applied to the four cases.

JUDGE DONLON: And the dates with which testimony has been adduced with respect to 230945–K are the same dates that are covered by the stipulation, with respect to 230947–K, 230948–K, and 230946–K?

MR. WEIL: Yes, your Honor.

MR. HEDIN: Yes, your Honor.

From this, it appears that Mr. Padilla performed none of the discretionary acts of liquidation, but that he was officially responsible for the clerical, or ministerial, duty of entering in the register, on the invoice summary sheets, and perhaps elsewhere, what the decision of the court was. Following Mr. Padilla's testimony, defendant offered to stipulate that the "error by the Collector's office applied to the four cases," that is, the four consolidated cases now before us.

Error is proven. I hold this was clerical error, within the meaning of section 520 (c) (1), inasmuch as it was the error of a clerk whose duties were wholly clerical with respect to the act in which the error occurred. I hold it was clerical error manifest from the record, but likewise established, within the customs service, by documentary evidence.

As to the time requirements of section 520, the protests claim that the collector's refusal to correct was on April 30, 1954. Mr. John C. Townsend, then deputy collector in charge of the liquidating division in the collector's office at Los Angeles, corroborated this date in his testimony. (R. 8.)

The protests against such refusal were filed June 28, 1954. That was brought out in cross-examination of plaintiffs' witness, Mr. Anthony S. Schimmer, acting deputy collector of customs in charge of the liquidating division in the Los Angeles collector's office on September 20, 1956, testifying with the official files in his hand. (R. 16, 17.)

The pertinent dates of record show that the merchandise entries, in the four cases, were between 1935 and 1941; that the entries were liquidated by the collector in Los Angeles between May 14, 1953, and July 15, 1953; that, on October 16, 1953, the clerical error was called to the attention of the Los Angeles collector, in writing; that, on April 30, 1954, the collector refused to correct the clerical error; that within 60 days thereafter, namely, on June 28, 1954, plaintiffs filed the protests which are now before us. There is not any testimony as to the date of the clerical entry, nor does it appear from the record. How-

ever, it cannot be earlier than December 2, 1952, the date on which the court entered its decree in the reappraisement appeal.

Whether or not the clerical error in these cases was called to the attention of the customs service within the time prescribed in section 520 (c) (1) is an issue the court is to decide. It is this issue, arising under the new language enacted in the Customs Simplification Act of 1953, to which Judge Ekwall referred in the prior opinion of the court in these cases (*Nozaki Bros., Inc., et al., supra*). He referred also to the importance of carrying out the congressional intention in our construction and application of the facts of record, including evidence adduced when the cases were returned to trial term for that purpose.

There is no doubt that liquidation of these entries occurred more than 10 months after the entry dates. These are very old entries, the earliest dating from 1935 and none later than 1941. For reasons not significant to our present decision, but including the trial and decision of the appeal to reappraisement of merchandise values, the collector did not liquidate these entries until more than 10 years after the entry dates. If what is protested is clerical error in the liquidations, then the limiting language of section 520 (c) (1) will deny to these plaintiffs the relief they seek, because of the fact that the liquidations took place more than 10 months after the entries. If the clerical error is in the liquidations, the period of limitation for bringing that error to the collector's attention is 60 days after the liquidations.

The alternative possible sources of clerical error besides liquidation, which are to be corrected by collectors under the statutory mandate of section 520 (c) (1), are entry, appraisement, and "other customs transaction." Here, the manifest clerical error was not in the entries. It was not in the appraisement, for the values decreed by the court are the appraisement values.

Was the clerical error in these cases an error in liquidation or in some other customs transaction?

Although these liquidations were unlawful and might have been attacked by timely protests, the liquidations were not protested. The clerical error which the collector refused to correct, and which refusal was protested, was the clerical error of a clerk who had no authority to liquidate. The record is clear in that respect. The clerical error that is manifest from the record, is not a *clerical error* in liquidation.

Was the error committed in some other customs transaction? These appear to be cases of first impression in the construction of that language, newly inserted into the tariff act in the Customs Simplification Act of 1953. Before proceeding to construction of this language, it is advisable to have in mind the objectives Congress had when the Customs Simplification Act of 1953 was enacted.

The purpose is stated in Senate Report No. 632 of the Senate Finance Committee on H. R. 5877, which (as amended prior to enactment) became the Customs Simplification Act of 1953. (U. S. Code Cong. and Adm. News, 1953.) That purpose is as follows:

The administrative and procedural provisions of the customs laws of the United States have not kept pace with the rapid expansion of international trade and the many recent far-reaching changes in methods of transportation and the interchange of commodities. H. R. 5877 improves customs operations and reduces both the time and expense of administering them. It eliminates certain unnecessary annoyances and inequities which plague both the Government and private parties engaged in the import-export business. It lays the groundwork for substantial savings in the cost to the Government of handling the vast amount of goods entering this country from foreign sources. (P. 2283.)

Hon. H. Chapman Rose, Assistant Secretary of the Treasury, testifying before the House Committee on Ways and Means, said as follows:

The law of customs administration and procedure, as distinguished from the rate structure, enacted in the Tariff Act of 1930 has been generally revised only once, by the Customs Administrative Act of 1938. Since that time many changes have occurred in industry and commerce; and the Customs Simplification Act of 1953 will to a large extent modernize the administrative and procedural laws in accordance with the objective of giving improved service to the importing public at the least possible cost to the taxpayer.

The provisions which are most necessary to achieve these purposes are the following (the references are to sections of the Tariff Act of 1930): * * * to permit correction by customs officers of admitted errors without appeal to the courts (sec. 520 (c) (1)); [Hearing before the Committee on Ways and Means, House of Representatives, Eighty-Third Congress, First Session on H. R. 5106, p. 15.]

There seems to have been little controversy with respect to the proposed amendment to section 520 (c) (1), if one may so conclude from the paucity of attention given to it in the hearings before the House Committee and in the report of the Senate Finance Committee. Customs officers were to be permitted to correct admitted errors without appeal to the courts, and this was a provision necessary, with others, to modernize the administration and procedural laws in order to carry out the objective of giving improved service to the importing public. That is to say, it was an amendment to benefit importers. It is in this frame of congressional intention that the statutory language should be construed.

It may be that elsewhere in the Tariff Act of 1930, Congress has used the expression "customs transaction." If this is so, diligent search fails to disclose it.

Judicial construction of the word "transaction" has been most frequent in connection with questions of procedure, under law or rule. Since the purpose of section 520 (c) (1) is procedural, rather than substantive, such construction may have relevancy to the decision here.

Mr. Justice Sutherland took a broad view of what "transaction" includes, in *Moore* v. *New York Cotton Exchange*, 270 U. S. 593, when, at page 610, he said:

\* \* \* "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.

I am of opinion that Congress intended, in the spirit in which the Customs Simplification Act of 1953 was enacted, to give to collectors broad authority to correct manifest clerical errors, not only in entries and liquidations, but also in any transaction within the customs service in which such clerical error might occur. I am of the opinion that the action of a customs clerk, charged by the collector with the duty of receiving and transcribing, in various records, the decision of the court in a reappraisement appeal, is such a "customs transaction" as Congress had in mind.

That there was error in that transaction is manifest from the record. It was established by documentary evidence within the customs service. Liquidation took place within 10 months after the transaction in which the error occurred. Therefore, the importers adversely affected by the error had a period of 1 year after the transaction within which to bring the error to the attention of the customs service. This they did.

The protests against refusal to correct the error were timely filed. *Hudson Fwdg. & Shipping Co.* v. *United States*, 63 Treas. Dec. 819, T. D. 46389. They do not concern a discretionary decision of the Secretary of the Treasury. They concern a clerical or ministerial error of a clerk in the Los Angeles collector's office, for which Congress provided a remedy the collector could have taken under section 520, and for his refusal to do so Congress has authorized protest under section 514.

Judgment should issue sustaining the protests and directing the collector at Los Angeles to correct the clerical errors by conforming the record of appraised values of the merchandise to the values decreed by this court in *Pacific Trading Co., Inc., et al.* v. *United States, supra*, to reliquidate on the basis of the corrected values, and to recompute duties and make appropriate refund of duties illegally exacted.

It should be pointed out that, even if these liquidations are void, judgment should issue in favor of plaintiffs, directing the collector to correct the manifest clerical errors, correction which thus far he has refused to make. I am of opinion both that the liquidations are not void and that, in enacting the Customs Simplification Act of 1953, Congress gave to this court jurisdiction to settle, in a single litigation, the natural consequences which flow from a clerical error that is timely protested and which should, on the facts of record, be corrected. Importers who find themselves, due to admitted clerical error in the

customs service, in the situation of these plaintiffs, should not, in order to extricate themselves, find it necessary to prosecute two litigations. At the very least, the first litigation should, in the circumstances before us, terminate in an order directing the collector to correct the clerical errors of which plaintiffs complain. Only if those errors are corrected, is there reasonable basis for hope that the liquidations *in futuro*, contemplated by the decision of the majority, will be both valid acts and lawful actions.